## UNITED STATES v. BROWDER.
### No. 305.

Circuit Court of Appeals, Second Circuit.
June 24, 1940.

Walter H. Pollak and Carol King, both of New York City, Benjamin Goldring, of Brooklyn, N. Y., and Edward Kuntz, of New York City, for appellant.

John T. Cahill, Lester C. Dunigan, Frank H. Gordon, and Robert L. Werner, all of New York City (Ashley J. Nicholas, Sp. Asst. to the U. S. Atty., of New York City, of counsel), for the United States.

Before SWAN, CHASE, and PATTERSON, Circuit Judges.

PATTERSON, Circuit Judge.

This appeal raises a point of law, whether the exhibition of a passport to a United States immigrant inspector as proof of the appellant's citizenship on his entry into this country from a trip abroad is a "use" of such passport within the meaning of 22 U.S.Code, § 220, 22 U.S.C.A. § 220. Section 220, originally section 2 of title IX of the Act of June 15, 1917, reads: "Whoever shall willfully and knowingly make any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws, or whoever shall willfully and knowingly use or attempt to use, or furnish to another for use, any passport the issue of which was secured in any way by reason of any false statement, shall be fined not more than $2,000 or imprisoned not more than five years or both."

The indictment was in two counts. The first charged that the appellant, having obtained a passport by false statement to the effect that he had had no previous passport, used the passport on April 30, 1937, by presenting it to an immigrant inspector to secure entry into the United States. The second count charged the appellant with a similar use of the same passport on February 15, 1938.

At the trial the evidence in behalf of the United States showed that the appellant in August, 1934, made written application for a United States passport. The printed form of application contained the clause, "My last passport was obtained from......and is submitted herewith for cancellation." The appellant wrote the word "none" in the blank space and signed the application. There was evidence that actually the appellant had previously applied for and obtained three passports under names other, than his own, first in 1921, again in 1927, and again in 1931. On the 1934 application a passport was issued by the Department of State on September 1, 1934. The period of validity, two years, was later extended for an additional two years at the appellant's request. On April 30, 1937, the appellant, returning to this country from a trip abroad, exhibited the passport to one Larsen, an immigrant inspector who boarded the vessel at the port of New York, as proof of his citizenship and right to enter the United States. On February 15, 1938, returning from another trip abroad, he exhibited the passport to another immigrant inspector at the port of New York. The appellant put in no evidence. The case went to the jury, and a verdict of guilty on both counts was returned.

The appellant urges that the exhibition of the passport to an immigrant inspector at the port of New York, while a use of the passport, was not the kind of use prohibited by the statute. The meaning to be attached to the word "use", the argument runs, should be restricted to use abroad, in view of the purpose for which passports are issued and in view of the evil which the statute was designed to eradicate. It is pointed out that production of a passport is not required of a citizen of the United States to re-enter the country; other evidence of citizenship will suffice. The argument is not without force. It is quite true that a passport is primarily for use in travel abroad. A passport "certifies that the person therein described is a citizen of the United States and requests for him while abroad permission to come and go as well as lawful aid and protection." Borchard, Diplomatic Protection of Citizens Abroad, p. 493. It has been described as "a document which, from its nature and object, is addressed to foreign powers". Urtetiqui v. D'Arcy, 9 Pet. 692, 699, 9 L. Ed. 276. Similar definitions are given in

Moore, International Law Digest (1906), p. 856; Hyde, International Law Chiefly As Interpreted And Applied By The United States (1922), p. 692; 17 Op. Atty. Gen., 674. But the sweeping statement that the American passport "has no sanctioned uses, customary or statutory, within the United States", taken from Hunt, The American Passport (1898), p. 4, is certainly subject to qualification. A use that is long established and takes place commonly within the United States is the presentation of a passport to foreign consulates here for procurement of visa, in anticipation of travel abroad. See Hunt, p. 5; Hyde, pp. 698, 699; Borchard, pp. 504–506; Circular of Department of State, February 8, 1915.

The appellant also refers to regulations of the Department of State in force from 1911 to 1920, to the effect that passports "are intended for identification and protection in foreign countries, and not to facilitate entry into the United States." However it may have been prior to 1920, the Department of State in official publications, "Notice to Bearers of Passports", published at frequent intervals from 1930 to the present time, has recommended the use of passports to facilitate entry into the United States. In these publications the Department of State says: "An American citizen leaving the United States for a country where passports are not required is nevertheless advised to carry a passport, except in travel to Canada and Mexico. The passport may later save the time and inconvenience of applying for one abroad should the holder desire to travel in countries where passports are required. It will also enable the holder to establish his American citizenship upon his return to the United States and thus facilitate his entry." And there is testimony in the case that production of passport is one of the methods used to convince immigrant inspectors of a passenger's American citizenship and consequent right to enter the United States. It cannot be doubted, therefore, that in 1937 and 1938 the exhibition of a passport to an immigrant inspector as proof of the bearer's citizenship and right to enter the country from a vessel arriving at New York was a sanctioned and recognized use of a passport.

■ The words of the 1917 statute are broad,—"whoever shall willfully and knowingly use or attempt to use, or furnish to another for use, any passport the issue of which was secured in any way by reason of any false statement". Literally, the words cover any and all uses to which a passport might be put. We assume, however, that the statute goes no further than to forbid the use of a passport obtained by false statement as a credential of citizenship in the ways to which regular passports are commonly put. We also assume that in 1917 the use of a passport to prove citizenship on entry into this country had not become customary. The fact that is decisive of the point of law raised by the appellant is that such a use was a sanctioned and recognized use in 1937 and in 1938, when the acts charged in the indictment occurred. The meaning of a statute does not change save as it may be amended; but a statute is prospective and its application to a given state of facts may change as new things or new uses of old things come into existence. See De Lima v. Bidwell, 182 U.S. 1, 21 S.Ct. 743, 45 L.Ed. 1041; Puerto Rico v. Shell Co., 302 U.S. 253, 58 S.Ct. 167, 82 L.Ed. 235; Maxwell on Interpretation of Statutes, 6th Ed., pp. 144–145. As we read the statute, it forbids putting passports obtained by false statement to any of the uses to which passports regularly issued may be customarily put. The production of a passport to an immigrant inspector as proof of the bearer's citizenship and right to enter the country having become a sanctioned and recognized use of a passport prior to the times charged in the indictment, we are of opinion that such a use of a passport obtained by false statement constitutes a violation of the act, provided the use in a particular case was a willful and knowing one.

■ The appellant's argument as to the evil which the act was designed to overcome, the fraudulent use of passports in 1914–1917, does not persuade us that the act was intended to apply solely to the misuse of American passports in foreign lands. Another argument is that use of an expired passport, in effect forbidden under section 4 of the same title, 22 U.S.C.A. § 222, would not include use of an expired passport to identify an American citizen re-entering this country, and in this connection it is claimed that use of expired passports by citizens returning from Canada and Bermuda is countenanced by immigrant inspectors. We have no way of knowing whether that use of expired passports is prevalent, and we see no need of

passing on the legality of such a practice.

The contention is also made that the trial judge erred in denying a motion to dismiss at the close of the case on the ground that as matter of law there was no willful and knowing use of the passport. On the evidence it was for the jury to say whether the appellant's use of the passport was a willful and knowing use, and denial of the motion to take that issue from the jury was not erroneous. The trial judge explained the meaning of the words in his charge, and the appellant took no exception to the definition and did not ask that a more particular exposition be given. We cannot condemn the charge for not being more specific when no exceptions raising the point were taken. Greater New York Live Poultry Chamber of Commerce v. United States, 2 Cir., 47 F.2d 156. Complaint is also made of refusal of requests to charge. Whatever was essential in the requests was adequately covered in the charge as given.

Affirmed.