## BROWDER v. UNITED STATES.

No. 287. Argued January 16, 1941.—Decided February 17, 1941.

*Mr. Carl S. Stern*, with whom *Carol King* was on the brief, for petitioner.

*Mr. John T. Cahill*, with whom *Solicitor General Biddle, Assistant Attorney General Berge*, and *Messrs. Herbert Wechsler, Raoul Berger*, and *Robert L. Werner* were on the brief, for the United States.

MR. JUSTICE REED delivered the opinion of the Court.

The question is whether the use by an American citizen of a passport obtained by false statements to facilitate reëntry into the United States is a "use" within § 2 of the Passport Title of the Act of June 15, 1917,[1]

[1] 40 Stat. 217, 227, Title IX:

"SEC. 2. Whoever shall willfully and knowingly make any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the

and, if so, whether petitioner was properly convicted of a "willful" use. We brought the case here because of its importance in the administration of the passport laws.

Section 2 provides that whoever shall either make a false statement in an application for a passport or "shall willfully and knowingly use . . . any passport the issue of which was secured in any way by reason of any false statement, shall be fined not more than $2,000 or imprisoned not more than five years or both." The indictment in two counts charged that·petitioner, having secured a passport by a false statement, willfully and knowingly used it on April 30, 1937, and again on February 15, 1938, each time by presenting it to an immigration inspector to gain entry into the United States. The proof showed that petitioner, a native-born American citizen, had in 1921, 1927 and 1931 obtained passports under different assumed names by means of false statements. In 1934 petitioner applied for a passport in his own name. The application blank contained the clause: "My last passport was obtained from . . . . . . . . . . . . . :. . . . and is submitted herewith for cancellation." Despite the three passports previously issued to him, petitioner wrote "none" in the blank space, then signed the application and swore to the truth of its contents. The Government issued him a passport, which was later extended upon a renewal application until September 1, 1938. Returning from Europe in April, 1937, and again in February,

laws regulating the issuance of passports or the rules prescribed pursuant to such laws, or whoever shall willfully and knowingly use or attempt to use, or furnish to another for use, any passport the issue of which was secured in any way by reason of any false statement, shall be fined not more than $2,000 or imprisoned not more than five years or both."

By the Act of March 28, 1940, the maximum term of imprisonment under this section was increased to ten years. 54 Stat. 80.

1938, petitioner showed his passport to an inspector to identify himself and establish his citizenship and consequent right to reënter the United States. The jury convicted him on both counts for willfully using a passport secured by a false statement, and the District Court sentenced him to two years' imprisonment and a fine of $1,000 on each count, the terms to run consecutively. The Circuit Court of Appeals affirmed.[2] At the time of the indictment, the statute of limitations had run on the obtaining of the passport by a false statement (18 U. S. C. § 582).

Petitioner contends that the indictment is for the "use" "of a passport as truthful proof of his Kansas birth." Since the "use" to prove an admitted fact—his American citizenship—was innocent, it is urged, no statutory prohibition was violated. The indictment, however, charges that petitioner "used . . . a passport . . . the issue of which he secured by reason of a false statement . . . in the application therefor." The language of the indictment conforms to the definition of the offense in the statute, as the use of "any passport the issue of which was secured in any way by reason of any false statement." The balanced form of § 2, quoted above at note 1, shows that the Congress viewed with concern and punished with equal severity the securing of passports by false statements and their use. The crimes denounced are not the securing or the use but either of such actions made criminal only by the false statements in the procurement of the passport. If the misrepresentation is withdrawn nothing culpable remains in the use. A condemned use of a passport secured by the fraud seems obviously within the act.

A more difficult issue emerges from petitioner's assertion that the use proven here is not the kind of use covered by the statute. He finds the prohibitions di-

---

[2] 113 F. 2d 97.

rected against "dishonest uses of the safe-conduct of the United States in foreign relations." Such use must be "willful and knowing," an expression said to bear the connotation of evil or dishonest. Attention is called to alleged passport frauds of about the time of the passage of the passport sections and to the recommendation of the Attorney General that Congress pass legislation against the fraudulent use of passports.[3] These are brought forward as indicative of the purpose of Congress to punish fraudulent uses or those uses abroad which would involve misuse of the privilege, under international law, of traveling through foreign countries.

It is quite true that passports are used chiefly in foreign travel. There is no limitation, however, to that field and surely the close connection between foreign travel and reëntry to this country is obvious. The plain meaning of the words of the act covers this use. No single argument has more weight in statutory interpretation than this.[4] Nothing in the legislative history is brought to our attention which indicates any other purpose in Congress than that expressed by the words of the act. The final form of the enactment did not vary in this particular portion from the bill originally introduced.[5] The Government does not urge that every use of a fraudulent passport is violative of the act but only those "uses in connection with travel which are a part of the ordinary incentives for obtaining passports." Certainly the use to prove citizenship on reëntry to the country is within the ordinary incentives.[6] It is en-

---

[3] Report of the Attorney General (1916), p. 17.

[4] *United States* v. *American Trucking Associations,* 310 U. S. 534, 543.

[5] H. R. 291, 65th Cong.

[6] Since 1929, the State Department has carried substantially the following suggestion in its "Notice to Bearers of Passports": "22. An American citizen leaving the United States for a country where pass-

tirely clear from the record that passports were customarily used to prove the bearer's citizenship on reëntry into the United States at the time of this alleged offense. The use of a passport for reëntry is now routine, although neither at the time of the passage of the act nor at present are passports required of citizens on reëntry. Our conclusion is not weakened by the fact that the Act of May 22, 1918,[7] which required citizens to use passports to depart from or enter the United States, was permitted to expire after the war emergency. While passports no longer were required for reëntry, their use for that purpose afterwards became both convenient and customary.

The fact that at the time of the passage of the act, passports were not customarily used by citizens to assure easy reëntry is brought forward by petitioner to support the argument that Congress did not intend to punish uses such as the one charged here. There is nothing in the legislative history to indicate that Congress considered the question of use by returning citizens. Old crimes, however, may be committed under new conditions. Old laws apply to changed situations.[8] The reach of the act is not sustained or opposed by the fact that it is sought to bring new situations under its terms.[9] While a statute

---

ports are not required is nevertheless advised to carry a passport, except in travel to Canada or Mexico. The passport may later save the time and inconvenience of applying for one abroad should the holder desire to travel in countries where passports are required. It will also enable the holder to establish his American citizenship upon his return to the United States and thus facilitate his entry. American citizens who leave the United States without passports should carry with them proof of their citizenship, such as birth, baptism, or naturalization certificates."

[7] 40 Stat. 559.

[8] Cf. *Cain* v. *Bowlby*, 114 F. 2d 519, 522, and cases and instances there cited; Maxwell, Interpretation of Statutes, (7th ed. 1929) pp. 69–70.

[9] *Newman* v. *Arthur*, 109 U. S. 132, 138; *Pickhardt* v. *Merritt*, 132 U. S. 252, 257; *De Lima* v. *Bidwell*, 182 U. S. 1, 197.

speaks from its enactment, even a criminal statute embraces everything which subsequently falls within its scope.[10]  The use here charged under these tests was clearly within the scope of the act.  The purpose of this act was to punish the use of passports obtained by false statements.

There is the further contention that the Government's construction of the word "use" would make criminal, under other sections of the act, the presentation of expired passports for the purpose of identifying citizens returning from Mexico, Bermuda and Canada.  Petitioner urges that such uses, though frequent and apparently acquiesced in by the authorities, would then violate § 3, which prohibits a use "in violation of the conditions or restrictions therein contained," and also § 4, which prohibits the use of a passport "validly issued which has become void by the occurrence of any condition therein prescribed invalidating the same."  The question of the meaning of other sections is not before us.  Considered solely from the standpoint of their analogy to § 2, the use of expired passports to identify the holder seems entirely different from the use of a passport obtained by false statements.  The vice in the latter is congenital. Its willful use is prohibited.

Petitioner points out, however, that the use must be "willfully and knowingly."  In his view this means a use which is dishonest in addition to or apart from the dishonesty in obtaining the passport, and  which is in itself evil "as the use of a passport to invoke fraudulently the protection of the United States abroad."  Further it is said this evil must be the kind of evil within the spirit and intendment of the act.  But the statute plainly does

---

[10] *State* v. *Butler,* 42 N. M. 271, 274; 76 P. 2d 1149; *Commonwealth* v. *Tilley,* 28 N. E. 2d 245 (Mass.); *People* v. *Hines,* 284 N. Y. 93, 104; 29 N. E. 2d 483.

not purport to punish fraudulent or dishonest use other than such as is involved in the use of a passport dishonestly obtained, None of its words suggest that fraudulent use is an element of the crime. The statute is aimed at the protection of the integrity of United States passports. It penalizes both procuring the passport by a false statement and its use when so procured. The crime of "use" is complete when the passport so obtained is used willfully and knowingly.

Read in its context the phrase "willfully and knowingly," as the trial court charged the jury, can be taken only as meaning "deliberately and with knowledge and not something which is merely careless or negligent or inadvertent." No exception was taken to this instruction. The point at issue arises because a motion was denied to dismiss the indictment on the ground that "the government's case is fatally defective in that it lacks the most essential ingredient of the entire case; namely, the criminal intent of the defendant at the time of the alleged act"; that there is "no proof that there was a knowing and willful use to gain entry." Petitioner relies upon *United States* v. *Murdock*.[11] That case affirmed a reversal of conviction for a violation of § 1114 (a) of the Revenue Act of 1926 and a like section of the 1928 act. These sections made it a misdemeanor for a taxpayer to "willfully" fail to supply information in regard to income. The taxpayer refused the information on the ground of privilege from fear of self-incrimination. At the time the law upon the point was uncertain. This reasonable fear, this Court held, entitled the taxpayer to requested instruction on his good faith in refusing to answer. This claim of constitutional right is quite different from the claim here of a right to use a passport obtained by false representation, contrary

[11] 290 U. S. 389, 394.

to the express words of the statute, because there was no ulterior evil purpose in mind. The *Murdock* opinion recognizes, p. 394, that the word "willful" often denotes an intentional as distinguished from an accidental act. Once the basic wrong under this passport statute is completed, that is the securing of a passport by a false statement, any intentional use of that passport in travel is punishable.

Other suggestions as a basis for reversal are made. These do not require particular comment.

*Affirmed.*

MR. JUSTICE MURPHY took no part in the consideration or decision of this case.