

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

February 4, 1965

Honorable Don Hall
Criminal District Attorney
McLennan County Courthouse
Waco, Texas

Opinion No. C-387

Re: Whether a person whose
driver's license has been
suspended under the Safety
Responsibility Act (Article
670lh, V.C.S.) must sur-
render such license to the
Department of Public
Safety on demand pursuant
to Section 32 (4), Article
6687b, V.C.S.

Dear Mr. Hall:

You recently requested an opinion of this office concerning the following question:

> "Should a person whose driver's
> license has been suspended under the
> provisions of the Safety Responsibility
> Act, (Article 670lh) be required to
> surrender said driver's license on demand
> in view of Section 32 (4), Article 6687b,
> V.C.S., of the Drivers License Law?"

In order to arrive at the correct answer to your question, it is felt necessary to first review the legislative history of the particular acts involved and their relationship to each other.

The Texas Motor Vehicle Safety Responsibility Act, codified as Article 670lh, V.C.S., was first enacted in 1951 by the 52nd Legislature and became effective January 1, 1952. Section 31 of that Act provides as follows:

> "Any person whose license or registration
> shall have been suspended as herein provided,
> or whose policy of insurance or bond, when
> required under this Act, shall have been can-
> celed or terminated, or who shall neglect to

-1828-

> furnish other proof upon request of
> the Department shall immediately return
> his license and registration to the Depart-
> ment. If any person shall fail to return
> to the Department the license or registra-
> tion as provided herein, the Department
> shall forthwith direct any peace officer to
> secure possession thereof and to return
> the same to the Department."

Section 32 (d) of the same Act states as follows:

> "(d) Any person willfully failing to
> return license or registration as required
> in Section 31 shall be fined not more than
> Five Hundred Dollars ($500) or imprisoned
> not to exceed thirty (30) days, or both."

The two above quoted sections of Article 6701h, if valid, would provide a practical means for enforcement of a suspension of a driver's license which has been suspended under the Safety Responsibility Act. However, in Attorney General's Opinion No. C-341 (1964), this office expressed its opinion that Section 32 (d), quoted above, construed in connection with Section 31, quoted above, is unconstitutional and void, as the term "immediately" is so indefinite and uncertain that men of common intelligence must necessarily guess as to the meaning of the term and differ as to its application. Thus, as you have observed, if the various law enforcement agencies concerned with enforcement of Article 6701h follow the above mentioned Attorney General's Opinion, the practical result is that the State, under the Safety Responsibility Act, is not afforded an effective course of action against the person who, after having his license suspended in accordance with the provisions of Article 6701h, shall refuse to return his license to the Department of Public Safety.

However, Article 6687b, Section 32 (4), V.C.S., a portion of the Drivers License Law, provides that it shall be unlawful for any person:

> ". . . .

> "4. To fail or refuse to surrender to the
> Department on demand any operator's,
> commercial operator's, or chauffeur's
> license which has been suspended, cancelled,
> or revoked as provided by law;

> " . . . ."   -1829-

Section 44 of that Act provides for penalties for violations of the provisions of Article 6687b. The question thus arises as to whether or not the penalty provisions of Article 6687b may be invoked and used as a means of enforcement against a person who refuses to return his license which has been suspended under the provisions of Article 6701h. Clearly, Section 32 (4), Article 6687b, declares it unlawful for any person to fail or refuse to surrender to the Department a license which has been suspended as provided by law. It does not limit the suspension covered to one obtained under Article 6687b. It would seem to logically follow that prosecution could be maintained under this Article for failure to surrender a license suspended under any other valid statute.

However, it must be noted that Section 32 (4) was first enacted by the Legislature in 1935 [Acts 1935, 44th Legislature, 2d C.S. Page 1785, Ch. 466, Sec. 19 (4)]. This Article was retained in the law as it was amended by Acts 1937, 45th Legislature, Page 752, Ch. 369. When the old Drivers License Law, above quoted, was repealed in 1941, and our present law, Article 6687b, enacted, Section 32 (4) was included. It is thus seen that the provisions of Section 32 (4) have been a part of our Drivers License Law since 1935, some 16 years prior to the effective date of Article 6701h.

From the above reviewed legislative history, it is therefore obvious that the suspensions as provided for in Article 6701h were not in existence until some 16 years subsequent to the passage of Article 6687b. Since Section 32 (4), Article 6687b, refers to all suspensions as provided by law, the fundamental issue to be decided in answering your question may be stated thusly: Is the "as provided by law" Section 32 (4), Article 6687b, to be construed as applying to a suspension under a law which did not exist until some 16 years after Section 32 (4). It is believed evident that the Legislature at the time Section 32 (4) was enacted had no specific intent that Section 32 (4) would apply to a suspension had under Article 6701h, passed some 16 years later. The answer to your question must depend upon the construction to be given the various statutes concerned. There has been found no Texas authority directly in point.

In 50 Am. Jur., Statutes, Section 237, is found the following language:

"....

"The language of a statute may be so broad, and its object so general, as to reach conditions

-1830-

not coming into existence until a long time after its enactment. Indeed, it is a general rule of statutory construction that, in the absence of a contrary indication, legislative enactments, which are prospective in operation and which are couched in general and comprehensive terms broad enough to include unknown things that might spring into existence in the future, even though they are words of the present tense, apply alike in new situations, cases, conditions, things, subjects, methods, inventions, or persons or entities coming into existence subsequent to their passage, where such situations, cases, conditions, things, subjects, methods, inventions, persons, or entities are of the same class as those specified, and can reasonably be said to come within the general purview, scope, purpose, and policy of the statute, the mischief sought to be prevented, and the evident meaning of the terms used.

"The latter rule prevails whether the new subject comes into existence by statute or otherwise . . . ."

In 82 C.J.S. Statutes, Section 319, appears the following statement:

"Statutes framed in general terms ordinarily apply to cases and subjects within their terms subsequently arising, and, unless plainly indicating the contrary, are to be construed prospectively, especially where substantive rights are involved. Accordingly, it is a usual rule of statutory construction that legislative enactments in general and comprehensive terms, prospective in operation, apply alike to all persons, subjects, and business within their purview and scope coming into existence subsequent to their passage. So, also, where a statute is expressed in general terms and in words of the present tense it will be construed to apply not only to things and conditions existing at its passage, but will also be given a prospective interpretation, by which it will apply to such as come into existence thereafter."

-1831-

In Sutherland-Statutory Construction, Vol. 2, 3rd Edition, Section 5102, appears the following:

> "Standards established by the medium of legislation are usually intended to have considerable breadth with the result that a statute may cover many situations that do not immediately occur to the mind. And so it is a general rule of statutory construction that a statute, expressed in general terms and words of present or future tense, will be applied, not only to situations existing and known at the time of the enactment, but also prospectively to things and conditions that come into existence thereafter. Legislation must be given elastic operation if it is to cope with the changing economic and social conditions . . . .
>
> "The rule that a statute will operate prospectively so as to include circumstances unknown at the time of enactment has been employed in the construction of penal as well as remedial statutes. . . ."

In <u>Browder vs. United States of America</u>, 312 U.S. 335, 85 L.Ed. 862, 61 S.Ct. 599 (1941), Mr. Justice Reed, speaking for the Court, made the following statement:

> "The fact that at the time of the passage of the act, passports were not customarily used by citizens to assure easy reentry is brought forward by petitioner to support the argument that Congress did not intend to punish uses such as the one charged here. There is nothing in the legislative history to indicate that Congress considered the question of use by returning citizens. <u>Old crimes, however, may be committed under new conditions. Old laws apply to changed situations. The reach of the act is not sustained or opposed by the fact that it is sought to bring new situations under its terms. While a statute speaks from its enactment, even a criminal statute embraces everything which subsequently falls within its scope</u> . . . ." (Emphasis added)

-1832-

It is thus seen from the authorities above quoted that the general rule of statutory construction is that legislation will be given a prospective application, and will apply to conditions and circumstances coming into existence subsequent to the passage of the legislation, even though the enacting body did not specifically intend that the new circumstance or condition would be covered by the legislation. The Browder case, supra, although not directly in point to the question here under consideration, indicates that the Supreme Court of the United States will follow the general rule as it is applied to criminal statutes, and will apply a penal statute to a condition arising subsequent to the enactment of the penal statute, even though the act complained of would not have been considered a crime at the time of the passage of the act.

It has been previously stated that there has been found no Texas authority directly in point. Even so, it is felt that the Texas Courts have expressed a tendency to follow the general rule of statutory construction outlined above. In Oil Well Drilling Co. vs. Associated Indemnity Corp., 258 S.W.2d 523 (Tex.Civ.App. 1953) affirmed 153 Tex. 153, 264 S.W.2d 697 (1954), on page 529 of the opinion of the Court of Civil Appeals is found the following:

> "Moreover, we believe that our law, even our statutory law, is a living thing capable of adjustment within certain limits to meet varying circumstances. Our law is not forever and immutably fixed like the rules of syntax of the ancient dead Latin and Greek languages. An example of what we mean is our exemption statute, Article 3832, subd. 10, V.A.C.S. When passed in 1870, the statute named a 'carriage' as exempt property. The statutory language has remained unchanged to this day. Certainly in 1870 the Legislature did not have automobiles in mind when it used the word 'carriage'. Yet our courts had no difficulty in holding that the word 'carriage' must be interpreted to include automobiles. Willis v. Schoelman, Tex.Civ.App., 206 S.W.2d 283. Our views on this subject are all the more applicable to a statute like the one now under consideration, which admittedly grants discretionary powers to the Board."

It should also be noted that in Section 39, Article 6701h, the Legislature indicated that the Safety Responsibility Act should in no respect

be considered as a repeal of the then existing motor vehicle laws of the State, but should be construed as supplemental thereto. Also, there is nothing in either of the acts above discussed, either expressed or implied, which would militate against the result reached by this opinion. Therefore, in view of the general rule of statutory construction above set out, and because of the fact that there has been found no authority which would indicate that the Texas Courts would reach a result other than that of the general rule, it is the opinion of this office that your question posed should be answered in the affirmative, and a person whose driver's license has been suspended under the provisions of the Safety Responsibility Act, Article 6701h, V.C.S., and who fails or refuses to surrender such suspended license upon demand to the Department of Public Safety may be prosecuted for said refusal in accordance with the provisions of Article 6687b, V.C.S.

SUMMARY

A person whose driver's license has been suspended under the provisions of the Safety Responsibility Act, Article 6701h, V.C.S. and who fails or refuses to surrender such suspended license upon demand to the Department of Public Safety, may be prosecuted for said refusal in accordance with the provisions of Article 6687b, V.C.S.

Yours very truly,

WAGGONER CARR
Attorney General

By _Sam L. Kelley_
Sam L. Kelley
Assistant

SLK:sss

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
Roger Tyler
Brady Coleman
Vince Taylor

APPROVED FOR THE ATTORNEY GENERAL
BY:  Stanton Stone