**UNITED STATES of America**

v.

**Milton WASMAN.**

**No. 78–253–Cr–NCR.**

United States District Court,
S. D. Florida,
Ft. Lauderdale Division.

Dec. 18, 1979.

Kevin M. Moore, Asst. U. S. Atty., Miami, Fla., for plaintiff.

James M. Russ, Orlando, Fla., for defendant.

## ORDER

ROETTGER, District Judge.

Defendant was indicted under 18 U.S.C. § 1542 for filing a false application for passport. In his opening statement defendant outlined what he expected the evidence to show. Moreover, after the Government rested its case, defendant proffered his anticipated evidence in great detail.

### DEFENDANT'S ASSERTED DEFENSE

Defendant is an attorney who has spent much time engaged in real estate transactions in the state of Florida.[1] Defendant and a man named Comninos, a resident of Switzerland who was of Greek extraction and had resided many years in Egypt, had been engaged in various land transactions in central Florida. Acrimony developed between the two and litigation followed. Nevertheless, Comninos advised defendant that he knew of wealthy Arab investors who would be interested in land purchases

---

1. Subsequent to the rendering of the order from the bench, the court has been advised of defendant's previous conviction for failing to file income tax returns. For the disciplinary action see: *The Florida Bar v. Wasman*, 366 So.2d 409 (Fla.1978).

in Florida. But Comninos suggested to Wasman that his name sounded "Jewish" and consequently the Arab investors would not want to deal with him.

Defendant, who already had a valid U.S. passport in his own name, then applied for a passport in the name of a deceased law school classmate and gathered promotional materials of various real estate ventures in Florida for a meeting to be held in London at the Carlton Tower hotel.

After the meeting in London, defendant and Comninos flew to Marbella, Spain where they passed their time patiently waiting for an audience with a sheik supposedly in nearby Malaga. Defendant went to Malaga with Comninos to meet the sheik but once there, instead of the anticipated meeting, Comninos advised defendant that defendant was being kidnapped. The kidnap was part of a scheme by disgruntled Italian investors who were unhappy over a previous investment in Florida real estate. The plan of the Italian investors was to offer defendant the opportunity for him to transfer real property worth $750,000 plus $25,000 in cash as the price for their not having him dumped into the Mediterranean bound to an anchor. This offer was not refused by Wasman. This kidnapping and extortion, instead of the hoped-for Arab investment, was the *Message from Malaga* (with apologies to Helen MacInnes.) [2]

## GOVERNMENT'S CASE

The Government presented its case showing that defendant applied for a passport under the name of David Hibbert Hendrick, Jr., purportedly born in Knoxville, Pennsylvania, in 1914. It further called both the agent in charge of the Passport Office and the employee at the Passport Office who actually processed the application; both identified defendant as the applicant.

Defendant presented a birth certificate at the Passport Office corroborating that he was David Hibbert Hendrick, Jr.; he brought along a friend, Barbara Bucci, and utilized the alternative method of corroboration by her swearing that she had known defendant for three years and that he was David Hibbert Hendrick, Jr. (Ms. Bucci was not indicted and did not testify.)

The Government also presented testimony of a fingerprint analyst who testified that defendant's fingerprint was on the reverse side of the passport application, and a questioned documents and photographic expert opined that the photograph attached to David Hendrick's application was the photograph of defendant. Evidence was also introduced that defendant and David Hendrick were law school classmates at the University of Miami in 1937 and 1938.

The Government rested its case. Motion of defendant for judgment of acquittal was denied and the Government moved to exclude defendant's testimony which had been revealed in the opening statement on the basis that it was not relevant. After the court inquired into the relevance of the evidence described in defendant's opening statement, defendant made a proffer outside the presence of the jury for more than one-and-one-half hours. The proffered evidence was essentially the same as set forth previously.

■ This court is not unmindful of the underlying general principle that defendant is entitled to present evidence supporting his theory of defense. But that evidence must indeed be relevant before it is admissible, Fed.R.Evid.Rule 402, and a motion to exclude testimony of defendant because it is not relevant should be granted under the proper circumstances. See *United States v. Tidwell*, 559 F.2d 262 (5th Cir. 1977); *United States v. Johnson*, 558 F.2d 744 (5th Cir. 1977).

---

**2.** Much of the defendant's proffer seems stranger and more thrilling than fiction and perhaps as exciting as works of Ms. MacInnes, Graham Greene, John LeCarre, or Ian Fleming.

Perhaps in keeping with the proffered scenario: following the trial Comninos and Manning, nei-

ther of whom was called to the stand, were in an auto struck by a truck on the interstate highway in Fort Lauderdale. Comninos was beheaded in the accident.

Defendant's asserted defense boils down to a simple proposition: that his motive in obtaining the passport—remembering that he already had a valid passport issued in his own name—was to outwit and dupe Arab investors and that therefore he lacked the criminal intent necessary to sustain a conviction under 18 U.S.C. § 1542. The defense, of course, confuses motive and intent. *U. S. v. Pomponio*, 528 F.2d 247 (4th Cir. 1975), reversed 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 600 (1976).

Defendant relies heavily on a recent Sixth Circuit decision in *U. S. v. Cox*, 593 F.2d 46 (6th Cir. 1979). Cox worked for the City of Detroit, and a number of witnesses identified him as Cox although one of them admitted she had known him to use a Muslim name on occasion. The defendant Cox took the stand and admitted making the passport application in the name of Carl Richard Stein. His testimony was that he knew entertainment personalities and athletes adopted other names and he thought there was nothing wrong in his doing it. He explained he was interested in establishing a small business and wanted the name for that purpose; he also explained he had been convicted of a felony seven years earlier while he was a college student and wanted to create a new identity, free of stigma of conviction. The defendant had obtained a new driver's license and a new social security card in the name of Carl Richard Stein and established credit in that name in one or more Detroit financial institutions although he had never filed in court for a change of name.

The Sixth Circuit pointed out the gravamen of the offense in § 1542 was the "making of a false statement. The securing or use of a passport is only made criminal if false statements are proven to have been involved in its procurement." 593 F.2d at 48. The court set forth the question to be resolved as whether the defendant made a false statement in his application by using the name Carl Richard Stein.

The Sixth Circuit concluded Cox was protected under the common law and that a person could adopt any name he or she wishes provided it is not done for fraudulent purposes. Consequently, the Sixth Circuit directed that a judgment of acquittal be entered.

After the court questioned defendant's counsel expressly on Wasman's intention about the use of the name Hendrick counsel finally answered, patently as an afterthought, that defendant would use the name Hendrick in such future promotional efforts.

Defendant further seeks to avoid § 1542 by claiming that he falls under the common law principle that he can adopt "any name he wishes, without resort to any court and without any legal proceedings, provided it is not done for fraudulent purposes." [The Michigan law as applied in *Cox*, supra.]

■ The totality of distinctions between Wasman's situation and Cox' refutes Wasman's contention: (1) Wasman, unlike Cox, already had a valid passport issued in his own name. There was no indication that Wasman turned in his passport or intended to. (2) Nothing in Wasman's proffer indicated any activities to change his name on a permanent basis, or for any degree of permanency other than an ad hoc business venture, compared with the strong evidence of what Cox had done. (3) Even the common law principle does not permit a name change if it is done for "fraudulent" purposes. The admitted purpose in the proffer was to deceive Arab investors who would not otherwise deal with him if they thought he was Jewish. To be sure, such bigotry is reprehensible. But admitted deception cannot be condoned to avoid bigotry: the end does not justify the means. The deception of an investor is clearly a fraudulent purpose and is contemplated by the exclusion to the common law rule.

The court granted the government's motion to exclude the testimony at the beginning of the defendant's case. Defendant rested his case without presenting any evidence and the jury returned a verdict of guilty.

■ Although the statute in *Pomponio* cases dealt with 26 U.S.C. § 7206, this court

concluded that the principles of law in *Pomponio* applied to 18 U.S.C. § 1542 involving making a false statement in applying for a passport. This court gave the identical instruction which the Supreme Court approved in *U. S. v. Pomponio*, 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 600 (1976), which instruction had been held to be reversible error by the Fourth Circuit Court of Appeals, 528 F.2d 247 (4th Cir. 1975).

The complete instruction given by this court was as follows:

Intent and motive should never be confused. Motive is what prompts a person to act, or fail to act. Intent refers only to the state of mind with which the act is done or omitted.

Personal advancement and financial gain are two well-recognized motives for much of human conduct. These laudable motives may prompt one person to voluntary acts of good, another to voluntary acts of crime.

Good motive alone is never a defense where the act done or omitted is a crime. So, the motive of the accused is immaterial except insofar as evidence of motive may aid in determination of state of mind or intent.

The court's application of the *Pomponio* rationale is buttressed by the rationale of the Supreme Court in *Browder v. U. S.*, 312 U.S. 335, 61 S.Ct. 599, 85 L.Ed. 862 (1941). In *Browder* the court dealt with the predecessor statute for the obtaining of a passport by a false statement and the use of a passport so obtained (22 U.S.C. § 222). The statute had run on the obtaining of the passport but not on the use and the Supreme Court affirmed the conviction of the petitioner.

The court concluded that either securing or the use of the passport is "made criminal only by the false statements in the procurement of the passport." 312 U.S. at 337, 61 S.Ct. at 601. The court further rejected petitioner's claim to right to use a passport obtained by false representation because there was no ulterior evil purpose in mind. 312 U.S. at 341, 61 S.Ct. 599. Although not squarely in point *Browder* certainly affords no solace to defendant in the instant case.

## CONCLUSION

Defendant sought a new trial for the court's ruling granting the Government's motion to exclude defendant's testimony. The court again concluded that the ruling was correct and a motion for a new trial must be denied.