959 F.2d 243
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Juan Benigno ZAMORA-SANCHEZ, Defendant-Appellant.
 No. 90-10372.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 4, 1991.
Decided April 8, 1992.
 
 Before BOOCHEVER, WILLIAM A. NORRIS and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Benigno Zamora-Sanchez (Sanchez) appeals his conviction and sentence for making false statements in applications for passport renewal and for misuse of a passport. Sanchez first argues that the district court abused its discretion when it denied his request to continue the scheduled trial date so that his new attorney could prepare and present several pretrial motions. We hold the district court did not abuse its discretion in denying the continuance. Sanchez also claims that the district court erred in refusing to give his proposed jury instructions and in admitting evidence of his prior convictions, and that the conditions of his sentence were not lawfully imposed. We find no reversible error as to these claims and affirm Sanchez' conviction and sentence.
 
 BACKGROUND
 
 3
 Sanchez, a Mexican citizen, entered the United States in 1969 without documentation. In approximately 1974, some friends gave him the birth certificate of Armando Garcia Garcia, an American citizen. Subsequently, Sanchez obtained a certificate of birth card, a birth registration card, and a driver's license in Garcia's name. In 1980 and 1985, Sanchez applied for and obtained a United States passport in Garcia's name. Sanchez used these passports to enter the United States on two occasions, in February 1984 and January 1986.
 
 
 4
 In October 1987 the Monterey County Sheriff's Department served Sanchez with five search warrants, four to search residential and commercial premises including vehicles where cocaine may be found, and one to search Sanchez' Cadillac. In Sanchez' house officers found $22,000 in cash, weapons, and approximately 14.3 grams of cocaine. Officers also searched a black Pontiac parked behind Sanchez' house. In the trunk of the Pontiac they found a blue suitcase from which they seized a birth certificate, passports, and other identification in Garcia's name but bearing Sanchez' photograph. Sanchez was indicted on state narcotics charges and weapons charges. The narcotics charges were subsequently dismissed, and the weapons charge on which he was convicted was reduced to a misdemeanor.
 
 
 5
 The federal government indicted Sanchez on counts involving fraudulent applications and use of passports. After arraignment, Sanchez retained the offices of A. Brent Carruth to represent him. Three different attorneys purported to represent Sanchez under Carruth's supervision. On March 5, 1990, the date set for trial, the third attorney, a Mr. Primpas, appeared and requested a continuance. The court told Primpas to call on March 12, 1990 for a new trial date. Primpas advised Sanchez to plead guilty because Sanchez had no defense.
 
 
 6
 On March 7, 1990, Sanchez contacted attorney James Larson. On March 12, 1990, Larson appeared specially and moved for a 30-day continuance and if the continuance was granted for leave to substitute as counsel. The court granted a continuance, ordering that the Sanchez case follow the United States v. Rind trial, estimated to take three weeks. On March 15, the court clerk notified Larson that the Rind trial had ended early and Sanchez' trial date was now March 21. The clerk also stated that Larson's second motion for continuance would be denied. On March 21, 1990, the district court formally denied the motion, and Sanchez' trial commenced. After a one-day presentation of evidence, the jury found Sanchez guilty on all four counts. The district court sentenced Sanchez to four years probation with the following conditions: to serve six months in a half-way house, to participate in drug treatment and testing, and to pay a $12,000 fine. This appeal followed.
 
 DISCUSSION
 I. Denial of Continuance
 
 7
 Sanchez argues that by refusing to continue the trial, the court prevented his attorney from investigating and presenting a motion to suppress evidence and a motion to dismiss for vindictive prosecution. We review the denial of a continuance for a "clear abuse of discretion." United States v. Cuevas, 847 F.2d 1417, 1428 (9th Cir.1988), cert. denied, 489 U.S. 1012 (1989). When reviewing such a denial, we consider (1) the appellant's diligence in preparing for trial, (2) the likely utility of the continuance, (3) the inconvenience to the court, the government, and its witnesses, and (4) the prejudice the appellant suffered as a result of the denial. See United States v. Flynt, 756 F.2d 1352, 1359 (9th Cir.), amended, 764 F.2d 675 (9th Cir.1985). The weight attributed to any single factor may vary with the extent of the showing on other factors. The appellant, however, must show he has suffered prejudice from the denial of continuance. Id. Here, weighing these factors indicates that the trial court did not abuse its discretion in denying the continuance.
 
 A. Diligence
 
 8
 Sanchez retained an attorney after his arraignment. On March 5, 1990, Sanchez decided that he needed a different attorney when his then-attorney suggested that he plead guilty for lack of a legal defense. Two days later, Sanchez consulted with Larson, who substituted in as counsel on March 12, 1990. The trial did not start until March 21, 1990. This was an uncomplicated case. In the absence of a showing that counsel had conflicting schedules, it was not a clear abuse of discretion for the trial court to allow nine days for preparation.
 
 
 9
 In addition, while Larson had filed a motion for leave to file a motion to suppress, no motion to suppress was filed by the day of trial. The court was prepared to hear such a motion on March 21, 1990, but counsel was not prepared to present it. Larson had been contacted two weeks previously, and from the contents of his declarations, he was well informed concerning defendant's case. There was enough time to raise the issues he claims were necessary by the date of trial. Larson did have time to file numerous other motions and a petition to this court for mandamus. On the other hand, his failure to file the motion to suppress leaves the issue of diligence in question.
 
 B. Utility of the Continuance
 
 10
 Sanchez sought the continuance so that his newly appointed attorney could investigate and prepare two pre-trial motions: a motion to suppress evidence and a motion for vindictive prosecution.
 
 
 11
 The theory on which Sanchez planned to base the motion to suppress evidence was that the search exceeded the scope of the warrant. The passports and identification papers introduced at trial were seized from a Pontiac parked in the back yard of Sanchez' house. On appeal, Sanchez contends that the only vehicle described in the warrant was the Cadillac, and that the Pontiac was not mentioned. The warrant for Sanchez' residence, however, stated that the items to be searched included "vehicles, storage areas, or containers where cocaine may be found." While the Pontiac was not specifically named, it was a vehicle in which cocaine could be found.
 
 
 12
 The Fourth Amendment commands that the warrant describe with "particularity" the place to be searched and the items to be seized. Stanford v. Texas, 379 U.S. 476, 481, 485-86 (1965), United States v. Holzman, 871 F.2d 1496, 1508 (9th Cir.1989). Here, the warrant meets this test. Moreover, if there were an error in issuing the warrant on less than probable cause, the good faith exception to the exclusionary rule would apply. United States v. Leon, 468 U.S. 897, 920 (1984). In the present case, officers executing the warrants had every reason to believe that "vehicles" specified in the warrant included the Pontiac, and therefore that their search of the Pontiac was authorized. Thus, the evidence indicates that the officers made the search in good faith, and there was no likelihood that the motion to suppress would have been successful.
 
 
 13
 Sanchez also argued that a continuance would have allowed him to investigate and prepare a motion for vindictive prosecution. Sometimes, in the absence of evidence showing actual vindictive prosecution a presumption of vindictiveness may be inferred. See United States v. Robinson, 644 F.2d 1270, 1272 (9th Cir.1981). To demonstrate the utility of the continuance in preparing this motion, Sanchez, at the least, must show facts that might lead to such a presumption. A presumption of vindictiveness arises when the " 'totality of circumstances surrounding the prosecutorial decision at issue' suggest an 'appearance of vindictiveness.' " Id. Sanchez, however, has not made an adequate showing to indicate he could meet the threshold "appearance of vindictiveness" test even if he were allowed additional time.
 
 
 14
 The essence of Sanchez' vindictive prosecution claim is the possibility that federal charges were filed at the behest of state authorities in retaliation for the unsuccessful outcome of the state proceedings. Here, the facts surrounding the federal prosecution and the prosecution's motivation for filing charges do not give rise to an appearance of vindictiveness. First, a key factor in determining whether vindictive prosecution exists is whether the second charge arose out of the same nucleus of facts as the original charge. See Robinson 644 F.2d at 1272-73. The charges in the instant case involve facts related to Sanchez' false statements in obtaining passports. The drugs and weapons charges in the state case involved facts related to Sanchez' activities as an alleged drug dealer. Hence, the two charges did not arise out of the same nucleus of facts. If the additional charge does not rise out of the same nucleus of operative facts as the original charge, a presumption of vindictiveness does not arise. United States v. Martinez, 785 F.2d 663, 669 (9th Cir.1986). Second, although Sanchez emphasizes that the federal charges were filed after the state proceedings were resolved, the fact that the second prosecution was brought by a different sovereign further weakens Sanchez' vindictive prosecution argument. Robinson 644 F.2d at 1273. It is well established that a defendant can be prosecuted by state and federal authorities for the same act. Id. Here, however, the state and federal authorities prosecuted Sanchez for different acts. Finally, there was no enhancement of the charges in this case. In vindictive prosecution cases it is the Government's attempt to " 'up the ante' by bringing new or more serious charges in response to the exercise of protected rights that violates the due process guarantee." Id. The federal false statement and use of passport charges, however, were not more serious charges than the state narcotics and weapons charges.
 
 
 15
 The mere fact that the federal prosecution followed the resolution of unrelated state charges in the defendant's favor is insufficient to raise the appearance of vindictiveness. Based on these factors, we see no likelihood that a motion for vindictive prosecution would have been successful. In summary, absent a showing of any likelihood that either the motion to suppress or the motion for vindictive prosecution would have been successful, we do not believe additional preparation time would have been useful.
 
 C. Inconvenience
 
 16
 The jury trial in this case lasted a day and a half. The government presented two local witnesses and there was no showing that they would have been inconvenienced by a continuance. Although the government argued that Larson had not been diligent in filing the motions, it did not assert it would have a problem making its witnesses available on another date. At most, the inconvenience would have been minimal.
 
 D. Prejudice
 
 17
 Most importantly, Sanchez did not suffer prejudice from the denial of continuance. Fairness and due process concerns may dictate that an accused be granted a continuance in order to prepare an adequate defense. United States v. Bogard, 846 F.2d 563, 566 (9th Cir.1988). In Flynt, where the defense had requested a continuance to obtain the only testimony potentially supportive of its insanity defense, we described the prejudice suffered by the defendant as "severe," since Flynt was "not allowed to put forward the only defense he had." Flynt, 756 F.2d at 1362. This case is distinguishable from Flynt in that no argument has been presented to us that indicates additional preparation time for the motions would have affected the outcome. By refusing to continue the trial, the court did not deprive Larson of the opportunity for an adequate defense.
 
 
 18
 In light of the above factors, we conclude that the district court did not abuse its discretion in refusing to grant a continuance. Accordingly, we affirm the district court's denial of continuance.
 
 II. Proposed Special Jury Instructions
 
 19
 Sanchez claims that the court's refusal to give his proposed jury instructions requires reversal of his conviction. Sanchez is entitled to jury instructions presenting his theory of the defense as long as the instructions are supported by law and have a basis in the evidence presented to the jury. United States v. Mason, 902 F.2d 1434, 1438 (9th Cir.1990) (citing United States v. Lopez, 885 F.2d 1428, 1434 (9th Cir.1989), cert. denied, 493 U.S. 1032 (1990)). A failure to give such instructions, however, is not reversible error if the instructions that are given adequately cover the defense theory. Id. We review the instruction given de novo to determine its adequacy. Id. We review the formulation of instructions for an abuse of discretion. United States v. Linn, 880 F.2d 209, 217 (9th Cir.1989).
 
 
 20
 Sanchez' defense theory was that he did not have a fraudulent purpose in using Garcia's name to apply for the passport and, thus, did not have the requisite intent to make a false statement which is a necessary element of the crime charged. Title 18 U.S.C. § 1542 states that the crime occurs when one "willfully and knowingly makes any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States ... contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws...." The crime is complete when one knowingly makes a false statement to procure a passport. Browder v. United States, 312 U.S. 335, 337 (1941). The requisite intent is that the statement be made intentionally with the purpose of disobeying or disregarding the law. See United States v. Winn, 577 F.2d 86, 91 (9th Cir.1978).
 
 
 21
 The court's refusal to give Sanchez' first proposed instruction was not a refusal to instruct on the theory of defense. Sanchez' proposed instruction stated: "[w]here use of false name is charged, the prosecution must, first, show that the name was not, in fact, the defendant's name, and, second, that the defendant assumed the name for a fraudulent purpose." In refusing to give this instruction the court did not abuse its discretion. The court's instructions contained a formulation of the requisite intent to make a false statement. Thus the instructions were an accurate statement of the law under Browder, 312 U.S. at 337-38, and Winn, 577 F.2d at 91.
 
 
 22
 The court properly refused Sanchez' second proposed instruction that "[u]nder the common law and the law of California, a person may adopt any name he or she wishes, without resort to any court and without any legal proceedings, provided it is not done for fraudulent purposes." This instruction had a basis in California law, which allows a person to change his name without resort to legal proceedings. Cal.Civ.Code § 1279.5 (West 1982). The proposed instructions, however, had no basis in the evidence. Sanchez failed to introduce any evidence at trial to show that he actually changed his name to Garcia, or to indicate his use of the name, Garcia, for any purpose other than to apply for the passports. Thus, we find no error in the district court's refusal to give the special jury instructions.
 
 III. Evidence of Other Crimes
 
 23
 Sanchez next claims his conviction should be reversed because the admission of his prior convictions was irrelevant and prejudicial. Exhibit No. 2, a document from Sanchez' INS file, contained information regarding his illegal entry in 1969 and prior convictions for a misdemeanor assault in 1983 and a DUI (driving under the influence) in 1982. The government introduced this exhibit to prove Sanchez' motive to make false statements to renew the passports. Over Sanchez' objections, the court admitted the entire document. At the close of the case, the court denied Sanchez' requests to redact the reference to the other convictions or to give a limiting instruction. Sanchez claims that his conviction should be reversed because the admission of the prior convictions was irrelevant and prejudicial. This court reviews decisions regarding the relevance of evidence and the admission or exclusion of evidence under Rule 403 for an abuse of discretion. United States v. Kessi, 868 F.2d 1097, 1107 (9th Cir.1989).
 
 
 24
 First, the document was admitted to prove motive which is a proper purpose for allowing evidence of other crimes under Fed.R.Evid. 404(b). Sanchez' illegal entry status showed his motive to make the false statements. The misdemeanor assault and DUI convictions, however, lacked relevance. While the court erred in not redacting the unrelated criminal convictions from the exhibit and in not giving a limiting instruction, it was a harmless error. The evidence against Sanchez was overwhelming.
 
 II. Sentencing
 
 25
 Sanchez asks us to vacate his sentence, arguing that the conditions of his probation were not lawfully imposed. Sanchez was sentenced to four years probation with the condition that he participate in narcotics testing and counseling and that he pay a fine of $12,000. We review conditions of probation for an abuse of discretion. See United States v. Polchlopek, 897 F.2d 997, 998 (9th Cir.1990) cert. denied, 111 S.Ct. 86 (1990).
 
 
 26
 In sentencing, the district court must consider any and all information that reasonably might bear on the proper sentence for a particular defendant to ensure that the punishment will suit not merely the offense but the individual defendant. Wasman v. United States, 468 U.S. 559, 563-64 (1984). To be valid, however, the probation conditions must be reasonably related both to Sanchez' rehabilitation and to protecting the public. Polchlopek, 897 F.2d at 998. Sanchez argues that drug testing and counseling are improper conditions because they do not reasonably relate to his background or the offense, namely making false statements in the application for passport renewals.
 
 
 27
 The record and Presentence Report indicate that more than 14 grams of cocaine were seized from Sanchez' home. The logical inference that Sanchez was a user himself or a distributor is sufficient to justify his required participation in drug counseling and testing. Moreover, the $12,000 fine is not excessive. It is well below the maximum penalty of $500,000 that the court could have imposed. In light of Sanchez' net worth, in excess of half a million dollars, and his monthly income of $4920, the $12,000 fine is reasonable. In summary, the district court did not abuse its discretion in imposing these conditions.
 
 Conclusion
 
 28
 The district court did not abuse its discretion in denying Sanchez' motion to continue the trial. Nor do we find reversible error in Sanchez' conviction and sentencing. AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3