UNITED STATES of America,
Appellee,

v.

Robert Ike GEORGE, also known as Robert George Ike, also known as George Edward Carter, Defendant–Appellant.

Docket No. 00–1601.

United States Court of Appeals,
Second Circuit.

Argued March 15, 2001.

Decided Sept. 26, 2001.

James Keneally, Law Offices of Don Buchwald, LLP, New York, N.Y. (Don Buchwald on the brief), for Defendant–Appellant.

Boyd M. Johnson, III, Assistant United States Attorney (Mary Jo White, United States Attorney for the Southern District of New York, Baruch Weiss, Assistant United States Attorney, on the brief), for Appellee.

Before SOTOMAYOR and KATZMANN, Circuit Judges, and BERTELSMAN, District Judge.*

SOTOMAYOR, Circuit Judge:

Defendant-appellant Robert Ike George was convicted of one count of making a false statement in a passport application in violation of 18 U.S.C. § 1542 after writing "New York, New York" in the space provided for his place of birth and "105577005" in the space provided for his Social Security number on his application. Despite the fact that the statute proscribes

* The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

"willfully and knowingly" making a false statement, the jury was instructed that it should judge George's actions against those of a "reasonable person." Because we find that Congress, in using the words "willfully and knowingly," required proof of a defendant's specific intent to make a false statement in a passport application, we hold that instructing the jury to compare George's actions to those of a "reasonable person" was constitutional error. Under the circumstances of this case, we hold that the error was prejudicial. On remand, we also note that any jury charge regarding this provision needs to include the statute's requirement that a defendant act "contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws." 18 U.S.C. § 1542.

## BACKGROUND

In 1996, George married a Japanese woman named Mayuko Shinpo. His wife continues to live in Japan but traveled to the United States to testify at George's trial. She stated that the two met in 1993 while defendant was working in a reggae club and restaurant in Japan. They were married in Saipan, the Northern Mariana Islands, where George lived after his visa to stay in Japan expired. George's wife testified that she visited him almost once a month in Saipan after their marriage. Later, when George was in the United States, she sent him money from Japan. Mayuko George stated that her husband had trouble explaining himself to others, and "[d]epending on the question, he might be able to not give you a straight answer or a very clear answer." She also testified that George had told her he was born in New York but that "because he doesn't know exactly where he was born, he's looking for his birthplace all over America."

On April 22, 1997, while living in Saipan, George submitted a passport application in which he stated that he was born in Chicago, Illinois and that "00000000" was his Social Security number. The Passport Agency responded that George needed to submit a certified birth certificate before the agency could process his application.[1] George then, on June 24, 1997, submitted a second application stating that he was born in Chicago, Illinois, adding that he had previously been issued a U.S. passport, No. 023948690, and attaching a photocopy of the prior passport. This passport number, however, corresponded to someone else. George was then convicted in United States District Court for the District of Northern Mariana Islands (Alex R. Munson, *Chief Judge* ) and sentenced to probation for an unspecified crime. After George violated his probation by attempting to leave for Japan, the court sentenced George to six months' imprisonment.

When imposing the term of imprisonment, the court ordered that, upon release from incarceration, George be remanded to the custody of the Immigration and Naturalization Service ("INS") for a determination of his citizenship and either the issuance of a United States passport or removal to the jurisdiction in which George was a citizen. George served his term of imprisonment in Los Angeles and was released there without the INS attempting to remove him from the United States and without being issued a passport.

After his release from custody in Los Angeles, George filed another passport application claiming that he was born in Michigan (without naming a city or town),

---

1. The record contains a photocopy of a birth certificate for "George R. Ike," showing that he was born on March 8, 1964 in Chicago, Illinois, but not indicating whether this was a certified copy of George's birth record.

and that he had the Social Security number "230–98–2879." With this application, George submitted a notice from the Michigan Department of Community Health stating that it had no record of George's birth in Detroit, Michigan for the years indicated. George also included a photocopy of his driver's license from the Northern Mariana Islands, showing that he was born in Chicago, Illinois. As a result of this application, George was prosecuted and convicted under the same statute as in this case, 18 U.S.C. § 1542. He was sentenced to six months' imprisonment.

In December 1998, soon after this second release from custody, George again appeared at the Los Angeles passport office to ask how to acquire a passport. He then submitted another application stating he was born in Detroit, Michigan and that his Social Security number was "230–98–2879"—the same information for which he had just been imprisoned. In support of this application, George submitted a letter from his United States Probation Officer describing George as "currently seeking clarification of his status through both the Japanese consulate and local authorities," and stating that in the Probation Officer's records, George's "place of birth is noted as Detroit, Michigan" and that "[h]e holds a Social Security number of 230–98–2879." [2] After George submitted this application, agents from the State Department searched for George at the addresses he had provided but were unable to locate him.

George left the area and traveled to New York. The record shows that, on December 25, 1998, he applied for shelter at the Bellevue Homeless Shelter in New York City. An employee who recorded George's personal information understood that his name was "Robin George," that he was born in Ghana, Africa, and had no Social Security number.[3]

On April 8, 1999, George went to a U.S. passport office in New York City and submitted the passport application that led to the conviction that is the subject of this appeal. On his application, George wrote that he was born in "New York, New York" and that his Social Security number was "105577005." In his testimony, George described why he gave this number when the application asked for his Social Security number.

> I explained to them because he asked me, the guy who was on the front of the door, he asked me, do you have your Social Security number, and I said I don't have no Social Security number. And he said, What do you have? And I said, I just get out the jail, and he said, If you have your jail number, we can identify who you are. So I just put my jail number, 00100577005. So because my jail number is right now, I can't get my memory for my jail number but before I can't get the memory because I don't keep it in my mind. So when I was putting it down here I just get a mistake and that's what they say I was using it for a Social Security number.

---

**2.** We note that while the government's brief claims that 230–98–2879 was "assigned to another person," Brief for Government at 11, the documents it cites show that the government actually searched for the name corresponding to a different number, 230–98–2379, finding that it was issued to an individual named Sean Richard Harrison. (Tr. 232, A 64, SA 42, 61).

**3.** The accuracy of the agency's record-keeping was called into question by a subsequent "Notice of Referral to Shelter" in the record that listed defendant's "surname, first name" as "Robin, George," even though defendant signed the form "Robert George." George testified that he told the agency he was raised, not born, in Ghana.

Agent Anthony Murphy of the Social Security Administration testified that "105–57–7005," the Social Security number that George had written on his passport application, had never been assigned to anyone. Concerning his place of birth, George submitted a form he had sent to the New York Department of Health requesting a birth record claiming that he was born in New York City, and the response from the New York Department of Health indicating that no such record could be found for the date indicated. George also presented an employee identification card from UHS Home Attendants, that contained George's name, signature, a description of his title as a "Home Aide," and listed a different Social Security number, "074–82–1241." At trial, Melanie Edwards, the personnel manager for UHS Home Attendants, testified that George had never worked for her organization and that the identification card George presented was fraudulent. Social Security agent Murphy testified that "074–82–1241" had been assigned to a six-year old boy named Justin Joseph Peretore.

When George returned to the passport office on April 12, 1999, he was questioned and arrested. He was carrying at the time, *inter alia*, (1) a Social Security card with the partially erased name of Justin Joseph Peretore below the Social Security number "074–82–1241"; (2) a round trip airplane ticket in George's name from New York to Tokyo, Japan; (3) a photocopy of what appears to be the same Northern Mariana Islands driver's license that George had used to apply for a passport in Los Angeles, listing his place of birth as Chicago, Illinois; and (4) a photocopy of George's Northern Mariana Islands marriage license listing his place of birth as Michigan. Upon arrest, George stated that his Social Security number was "230–98–2879."

George was charged with making false statements in a passport application in violation of 18 U.S.C. § 1542 and was found competent to stand trial. George testified at trial in his own defense, stating that although he was born in the United States, he was not sure precisely where, and explaining that his grandmother "said he [sic] don't know the actual place, Chicago, New York, because my mother live in New York, so he [sic] really don't know which particular place, Detroit. So he [sic] didn't know which particular place." George also stated that he was raised in "Ghana, which is South Africa."

The defense also called Dr. Mary Tramontin, a doctor at the Metropolitan Corrections Center, who testified that George, in trying to provide her with a telephone number for his wife in Japan, had confused the sequence of the numbers and had once provided an extra one or two digits.

In charging the jury, the district court broke the statutory provision down into three elements, stating that, in order to convict, they had to find that:

> First, the defendant made a false statement in an application for [a] United States passport. Second, the defendant made such false statement unlawfully, knowingly and wilfully, and third the defendant made such false statement with intent to secure the issuance of a United States passport.

In addition, the court delivered the following instruction:

> If you believe that Mr. George was trying to comply with the law by following the instructions of the person to whom he submitted his passport application and you believe that a reasonable person desirous of obeying the law would have accepted those instructions as accurate, then you may not convict Mr. George based on the fact that the number was not his actual Social Security number.

George's counsel objected to this charge. The jury found George guilty and the district court sentenced him principally to ten months' imprisonment. This appeal followed.

## DISCUSSION

### A. Jury Instructions

#### 1. Standard of Review

 The propriety of a jury instruction is a question of law that we review *de novo*. *See United States v. Naiman*, 211 F.3d 40, 50 (2d Cir.2000). "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *United States v. Walsh*, 194 F.3d 37, 52 (2d Cir.1999) (internal quotation marks omitted). Even if a jury instruction is erroneous, however, vacatur is appropriate only if the error was prejudicial and not simply harmless. *See United States v. Torres*, 845 F.2d 1165, 1171 (2d Cir.1988).

#### 2. 18 U.S.C. § 1542

 The relevant portion of the statute makes it illegal for anyone to

> willfully and knowingly make[ ] any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws.

18 U.S.C. § 1542. We begin by examining the statutory requirement that a defendant "willfully and knowingly makes any false statement in an application for passport."

*Id.* In *Browder v. United States*, 312 U.S. 335, 61 S.Ct. 599, 85 L.Ed. 862 (1941), the Supreme Court provided some guidance in interpreting the intent required under the statutory phrase "willfully and knowingly" by discussing the identical phrase found in the portion of 18 U.S.C. § 1542 that immediately follows that at issue here.[4] The Court stated that the words "willfully and knowingly . . . can be taken only as meaning deliberately and with knowledge and not something which is merely careless or negligent or inadvertent," *id.* at 341, 61 S.Ct. 599 (internal quotation marks omitted), and emphasized "that the word 'willful' often denotes an intentional as distinguished from an accidental act." *Id.* at 342, 61 S.Ct. 599. The normal canons of statutory construction counsel that "identical words used in different parts of the same act are intended to have the same meaning." *Sullivan v. Stroop*, 496 U.S. 478, 484, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990) (internal quotation marks omitted). Accordingly, we find that Congress, in using the phrase "willfully and knowingly" in the section of the statute at issue here, required that a defendant have the specific intent to make a false statement in a passport application. *Cf. United States v. Washington*, 705 F.2d 489, 493–94 (D.C.Cir.1983) ("[S]pecific intent . . . must be established to prove a violation of section 1542."); *United States v. Winn*, 577 F.2d 86, 91 (9th Cir.1978) (affirming jury instruction on Section 1542 providing that "an act is done willfully if done voluntarily and intentionally and with the specific intent to do something the law forbids; that is to say, with a purpose either to disobey or disregard the law").[5]

---

**4.** The next section of the statute provides that "[w]hoever willfully and knowingly uses or attempts to use, or furnishes to another for use any passport the issue of which was secured in any way by reason of any false statement [is guilty of a crime]." 18 U.S.C. § 1542.

**5.** In *United States v. Jean–Baptiste*, 166 F.3d 102, 111 (2d Cir.1999), we noted that Circuit

In order to make the distinction between general and specific intent "less esoteric," the Supreme Court offered the following factual scenario:

> [A] person entered a bank and took money from a teller at gunpoint, but deliberately failed to make a quick getaway from the bank in the hope of being arrested so that he would be returned to prison and treated for alcoholism. Though this defendant knowingly engaged in the acts of using force and taking money (satisfying "general intent"), he did not intend permanently to deprive the bank of its possession of the money (failing to satisfy "specific intent").

*Carter v. United States*, 530 U.S. 255, 268, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000) (discussing the federal bank robbery statute, 18 U.S.C. § 2113(a)).[6] In this case, even though George may have written "105577005" on his passport application knowing that it was not his Social Security number, the issue is whether he did this with the purpose of making a false statement to the Passport Agency. George argues that he used this number not in order to make a false statement but because a passport agent suggested that some other number besides his Social Se-

curity number might satisfy the question on the application.

The government argues, however, that the word "willfully" does not add anything to the word "knowingly," and that the word "knowingly" indicates general intent. Brief for Government at 38. This approach avoids the more obvious construction that Congress, to demonstrate that specific intent was required, used both terms to produce the phrase "willfully and knowingly." *See Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 696 n. 9, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995) (discussing change in wording in the Endangered Species Act from "willfully" to "knowingly" in order to indicate a general rather than a specific intent crime); *Potter v. United States*, 155 U.S. 438, 446, 15 S.Ct. 144, 39 L.Ed. 214 (1894) (finding that the word "willful" used to describe certain offenses but not others in same statute "cannot be regarded as mere surplusage; it means something").

### 3. The Jury Instruction

■ Consistent with the statutory language, George requested a jury instruction to clarify that, in order to satisfy the requirement that conduct was "knowing and willful," the government needed to prove George's specific intent to make a false statement.[7] The instruction proposed by

Courts "have concluded that the offense of making a false statement in a passport application may be proven without regard to whether the defendant had any intent to make fraudulent use of the passport." Because that discussion did not concern the issue presented here, neither did our approving citation in *Jean–Baptiste* to the Eleventh Circuit's statement that "[t]he crime is complete when one makes a statement one knows is untrue to procure a passport," *id.* (quoting *United States v. O'Bryant*, 775 F.2d 1528, 1535 (11th Cir.1985)), in addressing the separate issue of a defendant's justification for committing the crime.

6. We have remarked that while general intent ordinarily requires "at least an intention to make the bodily movement which constitutes the act which the crime requires," *United States v. Sewell*, 252 F.3d 647, 650 (2d Cir. 2001) (internal quotation marks omitted), specific intent requires "a special mental element particular to the crime with which [the] defendant is charged." *Id.* (internal quotation marks omitted).

7. Because we find that the statute required a showing of specific intent and that counsel for George appropriately requested that the jury charge clarify this requirement by giving the requested instruction, we find it unnecessary to address what instruction, if any, might

the defense reminded the jury that George had testified that the passport agent had suggested that a number other than a Social Security number would satisfy to identify him. The proposed instruction directed that if George was trying to comply with the law by following the advice of the passport agent, George would not have acted with the intent to make a false statement as required by the statute.

At the government's urging, the district court modified George's proposed instruction, however, by adding a phrase that forms the basis of this appeal. The modified instruction, with some minor changes, was then given to the jury. The text of this instruction follows, with the key modification in italics:

> The defense has contended, for example, that Mr. George explained to the person to whom he presented his passport application that he did not have a Social Security number and was told that he could put down some kind of identification number. The defense concedes that the number on the passport application is not Mr. George's Social Security number.
>
> . . . .
>
> If you believe that Mr. George was trying to comply with the law by following the instructions of the persons to whom he submitted his passport application *and you believe that a reasonable person desirous of obeying the law would have accepted those instructions as accurate,* then you may not convict Mr. George based on the fact that the number was not his actual Social Security number.

Consideration of the "reasonableness" of George's actions has no place in a jury

---

have been appropriate under the alternative theory of entrapment by estoppel discussed by

instruction on specific intent. In imposing the more onerous burden of showing specific intent, Congress set aside concern for what a "reasonable" person would have done under the circumstances to ask instead what *this* defendant intended by his actions. Even if George's actions were completely unreasonable, a jury must acquit if it fails to find, beyond a reasonable doubt, that he acted with the specific intent to make a false statement in his passport application.

### 4. Constitutional Error

When, as here, the erroneous instruction was accompanied by other instructions that created some ambiguity as to what was required for conviction, "constitutional error exists only if there is a reasonable likelihood that the jury . . . interpreted the instruction" according to the erroneous statement of the law. *Calderon v. Coleman,* 525 U.S. 141, 146, 119 S.Ct. 500, 142 L.Ed.2d 521 (1998) (per curiam). Earlier in its charge to the jury, the district court had provided more general guidance as to the mental state required for conviction. There, the court explained that "[a]n act is done willfully if it is done with an intention to do something the law forbids, a bad purpose to disobey the law," and that the defendant "must have been aware of the generally unlawful nature of [an] act." After speaking in these general terms, however, the court, as discussed above, directly addressed how the jury should interpret George's use of a number other than his Social Security number on his application. Because George admitted that the number he used was not his Social Security number, his defense hinged on the jury's inquiry into his intent. On this crucial point, the district court instructed

---

the government.

the jury not to convict if a "reasonable person desirous of obeying the law" would have accepted the instructions of the passport agent as true. We find that there was a reasonable likelihood that, when provided with general instructions about "bad purposes" and George's awareness of the "generally unlawful nature" of his acts, followed by specific instructions on how to interpret the precise behavior upon which George's conviction could depend, the jury interpreted the instructions as allowing it to convict George on the basis of the reasonableness of his actions instead of his specific intent. Accordingly, we find constitutional error in the instructions.

### 5. Harmless Error Analysis

■■■ Constitutional error in jury instructions does not require vacatur if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Neder v. United States,* 527 U.S. 1, 18, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). In making this assessment, we consider "(a) whether there was sufficient evidence to permit a jury to find in favor of the defendant on the omitted element, and, if there was, (b) whether the jury would nonetheless have returned the same verdict of guilty." *United States v. Jackson,* 196 F.3d 383, 386 (2d Cir.1999).

■■■ We "begin by asking whether the evidence in the record could rationally lead," *id.,* to a finding that George did not intend to make a false statement by using the number "105577005" on his passport application. As already noted, George explained in his trial testimony that he provided this number after the passport agent suggested that George might identify himself with his jail identification number if he had no Social Security number. Accordingly, the evidence was sufficient for a rational jury to find that George did not

act with the requisite intent when he provided a number other than his Social Security number on his application.

■■■ We next ask whether we are convinced, beyond a reasonable doubt, that the jury's verdict would have been the same absent the error in the instructions. *See Jackson,* 196 F.3d at 386. Because we do not possess this degree of certainty that the jury's verdict was not affected by the mistaken instruction, we find that the error was prejudicial. George's answer to this question on his application must be viewed in the context of George's defense that sought to portray him as earnestly trying to procure a passport for which he believed he was eligible to enable him to travel to see his wife in Japan, hindered only by his mental disorganization and a confessed uncertainty as to personal information that most people commit to memory at an early age. One noteworthy feature of George's passport applications was that, on two occasions, he appended to claims of his birth place documents that showed that this information was likely inaccurate. The first time, when applying in Los Angeles, George claimed he was born in "Michigan" but submitted an official notice from the Michigan authorities stating that there was no record of his birth in Michigan for the date indicated. The second instance involved the application that is the subject of this appeal, in which George stated that he was born in "New York, New York," but submitted a notice from the New York authorities stating that no record of his birth could be found for the date indicated. In addition, shortly after his release from custody in Los Angeles in December 1998 for violating 18 U.S.C. § 1542, George returned to the same passport office to submit the same information that had resulted in his previous imprisonment.

This evidence would support the theory that George pursued his applications with an honest desire to obtain a legitimate passport but was hampered by his limited mental faculties. Added to this was testimony by George's wife that he had difficulty expressing himself and giving clear answers and the testimony from a staff member of the Metropolitan Corrections Center concerning George's difficulty in supplying his wife's telephone number. Finally, the government presented no evidence that George had ever possessed multiple passports at one time in an effort to conceal his true identity or that he had legal status in some other country as evidence that he was ineligible to receive a United States passport. Given the opportunity, the INS declined to commence proceedings to remove George from the United States on the basis of his being in this country illegally.

In sum, George succeeded in presenting significant evidence of both his mental difficulties and his sincerity in attempting to acquire the United States passport for which he believed he was eligible. All this lent credibility to his testimony that he used something other than his Social Security number on his application upon the suggestion of the passport agent and not in an attempt to make a false statement to the Passport Agency. Whether this version of the facts is true remains a matter for the jury to decide. The government, for its part, presented evidence to support the contrary conclusion, including proof that George submitted a fraudulent identification card with his passport application. Based on the government's evidence, the jury might also have concluded that George had enough experience with the application process to know, by the time he submitted his fifth application, the exact information he needed to provide to the Passport Agency and disbelieved that

George innocently supplied a number other than his Social Security number.

We find that the error in the jury instruction was prejudicial, however, because we "cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error." *Neder*, 527 U.S. at 19, 119 S.Ct. 1827. The jury did not return a special verdict indicating whether it had convicted George on the basis of his providing a false Social Security number, a false place of birth, or both. We cannot be confident, therefore, that the jury did not convict solely upon finding that George was unreasonable in following the instructions of the passport agent.

B. "Contrary to the Laws"

■■■ On remand, we note that any charge to the jury under this provision must take into account all of its statutory elements. In its charge to the jury, the district court divided the statute into three elements:

> First, the defendant made a false statement in an application for [a] United States passport. Second, the defendant made such false statement unlawfully, knowingly and wilfully, and third the defendant made such false statement with intent to secure the issuance of a United States passport.

■■■ This reading of the statute effectively excises a portion of its text. After mentioning the intent to secure the issuance of a United States passport for the defendant's own use or the use of another, the statute continues: "contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws." 18 U.S.C. § 1542. The only reason for omitting discussion of this portion of the statute would be if this language were superfluous. According to the canons of statutory construction, however, we should not assume that any words of

the statute are superfluous until we have attempted, and failed, to give them independent meaning. *See, e.g. Dunn v. Commodity Futures Trading Comm'n,* 519 U.S. 465, 472, 117 S.Ct. 913, 137 L.Ed.2d 93 (1997) (recalling the "doctrine that legislative enactments should not be construed to render their provisions mere surplusage"). Our resistance to treating statutory terms as surplusage "should be heightened when the words describe an element of a criminal offense." *Ratzlaf v. United States,* 510 U.S. 135, 141, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994). On remand, jury instructions should be shaped with these considerations in mind.

### C. Other Claims

▮▮▮ The two other claims that George raises on appeal are without merit. First, George argues that the district court abused its discretion in not permitting the jury to view a videotape of George's wedding ceremony. George tried to introduce the videotape apparently to demonstrate his slow and unresponsive behavior at his wedding as evidence that whatever cognitive problems he has in acquiring a passport are endemic to his personality. The district court excluded the videotape from evidence under Fed.R.Evid. 403, finding that "its probative value is outweighed by the nature of the prejudice and would be confusing to the jury. It would make a sympathetic case for the defendant ... being [that he is] married. It is just too tangential." This Court "will second-guess a district court['s Rule 403 determination] only if there is a clear showing that the court abused its discretion or acted arbitrarily or irrationally." *United States v. Salameh,* 152 F.3d 88, 110 (2d Cir.1998) (internal quotation marks omitted). "[The] district court is obviously in the best position to do the balancing mandated by Rule 403," *id.,* and, accordingly, this Court grants "broad discretion" to the dis-

trict court to admit or exclude evidence pursuant to Rule 403. *United States v. Birney,* 686 F.2d 102, 106 (2d Cir.1982).

▮▮▮ The district court did not abuse its discretion in declining to admit the videotape into evidence. The fact that George was married to Mayuko Shinpo was undisputed. Whatever psychological problems George has were already exposed to the jury during George's extensive testimony. Moreover, viewing his wedding to the woman to whom he wanted to return in Japan, prevented from doing so only by want of a passport, could easily generate the kind of sympathy that the district court noted would be more prejudicial than probative.

▮▮▮ Second, George argues that the district court erred in denying his motion for judgment of acquittal under Fed. R.Crim.P. 29, claiming that the government failed to make out a *prima facie* case that he had provided false information in his passport application. As George concedes, though, even if the government's proof as to the falsity of "New York, New York" as his place of birth was insufficient, the conviction could be sustained if the government's proof that "105–57–7005" was not his Social Security number was legally supportable. *See Griffin v. United States,* 502 U.S. 46, 49–50, 112 S.Ct. 466, 116 L.Ed.2d 371 (1992) (affirming a general jury verdict under a single count charging the commission of an offense by two separate means as long as one was supportable). At trial, a Social Security Administration agent testified that the number "105–57–7005" had not been assigned to anyone as a Social Security number. Based upon this testimony, we find that the government presented sufficient evidence to show that "105–57–7005" was not George's Social Security number. As explained above, however, a retrial is needed

to determine whether George presented this information to the Passport Agency with the specific intent to make a false statement in his passport application.

## CONCLUSION

We vacate the judgment of conviction and remand for a new trial directing that the jury be instructed as to the specific intent required for conviction, taking into account all statutory elements of the offense.