**UNITED STATES of America,**
**Appellee,**

v.

**Robert Ike GEORGE, also known as "Robert George Ike," also known as "George Edward Carter" Defendant–Appellant.**

Docket No. 00–1601.

United States Court of Appeals, Second Circuit.

Argued: March 15, 2001.

Decided: Oct. 8, 2004.

James Keneally, Law Offices of Don Buchwald, LLP, New York, New York (Don Buchwald, on the brief), for Defendant–Appellant.

Boyd M. Johnson, III, Assistant United States Attorney, New York, New York (Mary Jo White, United States Attorney for the Southern District of New York, Baruch Weiss and Alexander H. Southwell, Assistant United States Attorneys, on the brief), for Appellee.

Before: SOTOMAYOR and KATZMANN, Circuit Judges, and BERTELSMAN, District Judge.*

SOTOMAYOR, Circuit Judge.

Defendant Robert Ike George appeals from a judgment of the United States District Court for the Southern District of New York (Stein, J.) convicting him of one count of making a false statement in a passport application in violation of 18 U.S.C. § 1542. On September 26, 2001, this panel of the Court held that § 1542's "willfully and knowingly" *mens rea* provision required proof of a defendant's specific intent (as demonstrated by purpose) to make a false statement in a passport application and that the district court's jury instruction requiring George's actions to be compared to those of a "reasonable person" was prejudicial constitutional error. *United States v. George*, 266 F.3d 52, 59–62 (2d Cir.2001).

* The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

On January 3, 2002, the United States government petitioned the panel for rehearing of its decision. The panel granted the government's petition on July 26, 2002. For the reasons discussed below, we now hold that (i) 18 U.S.C. § 1542's "willfully and knowingly" *mens rea* provision requires that the defendant provide in a passport application information he or she knows to be false, and (ii) the district court's jury instruction does not require reversal. This opinion vacates those portions of the earlier decision in the case, reported at 266 F.3d at 58–62, which addressed the requisite *mens rea* for conviction under § 1542 and the propriety of the district court's jury instructions.[1]

## BACKGROUND

We assume familiarity with the background of this case, which our original opinion sets forth in greater detail. *See id.* at 54–58. We summarize here only those facts pertinent to our disposition. On April 22, 1997, George submitted a United States passport application from Saipan, the Northern Mariana Islands, stating his birthplace as Chicago, Illinois, and listing a string of zero digits in lieu of a Social Security number. About two months later, George submitted a second passport application from Saipan on June 24, 1997, again stating that he was born in Chicago, Illinois, and asserting that he had been issued a United States passport, which he had lost. The passport number used by George in this application had been assigned lawfully to another individual. George was convicted in the United States District Court for the District of Northern Mariana Islands (Munson, C.J.)

for making false statements in this second passport application and sentenced to probation. The court subsequently sentenced George to six months' imprisonment in Los Angeles after George violated the terms of his probation order.

George filed another passport application after his release from custody, stating his birthplace as "Michigan" and listing his Social Security number as "230–98–2879," which had been lawfully assigned to another individual. As a consequence of the statements made in this third passport application, George was prosecuted and convicted for violating 18 U.S.C. § 1542. He was sentenced to six months' imprisonment.

After his release from custody in December 1998, George inquired at the Los Angeles passport office about his eligibility for a passport. Although George received notice that he could not receive a United States passport in the absence of evidence of his United States citizenship, George nonetheless submitted yet a fourth passport application to the Los Angeles passport office containing the same false statements about his birthplace and Social Security number for which he had most recently been prosecuted and convicted.

George subsequently relocated to New York City. Records from the Bellevue Homeless Shelter, where George applied for shelter upon arriving in New York, indicate that George stated that his name was "Robin George," that his birthplace was Ghana, Africa, that his date of birth was November 8, 1964, and that he had no Social Security number. On April 8, 1999, George filed the passport application that led to the conviction that is the subject of

---

1. In our original opinion, we also addressed George's claims that (i) the district court improperly excluded the videotape of George's wedding and (ii) the government failed to establish a *prima facie* case that George submitted a false birthplace on his passport application. We do not now reexamine those claims and affirm our earlier judgment that these claims lack merit. 266 F.3d at 63–64.

this appeal. On this fifth application, George wrote that he was born in "New York, New York" and that his Social Security number was "105577005." As supporting documentation for his application, George submitted an application for a birth record from the New York Department of Health on which he named New York City as his birthplace and a response from the Department stating that no such birth record existed for the indicated date. George also presented an employee identification card from UHS Home Attendants stating his Social Security number as "074–82–1241."

George was instructed to return to the passport office on April 12, 1999. Upon arriving at the office, passport officials questioned and arrested George. At the time of arrest, George was carrying documents including (1) a Social Security card with the partially erased name of Justin Joseph Peretore below the Social Security number "074–82–1241"; (2) a round-trip airplane ticket in George's name from New York to Tokyo, Japan; (3) a photocopy of George's Northern Mariana Islands driver's license listing his birthplace as Chicago, Illinois; (4) a photocopy of George's Northern Mariana Islands marriage license listing his birthplace as Michigan; and (5) an envelope with three handwritten versions of "105–57–7005" (the same number that George provided on his fifth passport application as his Social Security number). When asked pedigree information during the arrest, George did not provide an address but stated that his Social Security number was "230–98–

2879." George was charged with making false statements in a passport application in violation of 18 U.S.C. § 1542.

Testifying at trial in his own defense, George stated that he was born in the United States but was uncertain about the exact location of his birth.[2] Defendant's spouse, Mayuko George, testified that George had told her that he was born in New York but that "because he doesn't know exactly where he was born, he's looking for his birthplace all over America."[3] George explained why he gave the number "105–57–7005" when asked for his Social Security number:

> I explained to them because he asked me, the guy who was on the front of the door, he asked me, do you have your Social Security number, and I said I don't have no Social Security number. And he said, What do you have? And I said, I just get out the jail, and he said, If you have your jail number, we can identify who you are.
>
> So I just put my jail number, 00100577005. So because my jail number is right now, I can't get my memory for my jail number but before I can't get the memory because I don't keep it in my mind. So when I was putting it down here I just get a mistake and that's what they say I was using it for a Social Security number.

A Social Security agent testified at trial that "105–57–7005," the Social Security number that George had entered on his April 8, 1999 passport application, did not exist and was not assigned.[4] The person-

2. George explained that his grandmother "said he [sic] don't know the actual place, Chicago, New York, because my mother live in New York, so he [sic] really don't know which particular place, Detroit. So he [sic] didn't know which particular place."

3. Mayuko George also testified that George "has trouble explaining himself to others"

and "[d]epending on the question, he might be able to not give you a straight answer or a very clear answer."

4. According to the trial transcript, the witness at first stated that it was the number "105–56–7005" that did not exist. However, when then asked by counsel to confirm that "105–

nel manager for UHS Home Attendants testified that George had never worked for the organization and that the identification card George presented was fraudulent. A Social Security agent also testified that "074–82–1241" had been assigned to a six-year old boy named Justin Joseph Peretore.

The district court instructed the jury that in order to convict George, they had to determine that:

> First, the defendant made a false statement in an application for [a] United States passport. Second, the defendant made such false statement unlawfully, knowingly and willfully, and third the defendant made such false statement with intent to secure the issuance of a United States passport.

The court also delivered the following instruction, to which George's counsel objected:

> If you believe that Mr. George was trying to comply with the law by following the instructions of the person to whom he submitted his passport application and you believe that a reasonable person desirous of obeying the law would have accepted those instructions as accurate, then you may not convict Mr. George based on the fact that the number was not his actual Social Security number.

The jury found George guilty and the district court sentenced him principally to ten months' imprisonment. On appeal, this Court held, *inter alia*, that (i) conviction under § 1542 requires the government to prove the defendant's specific intent (as demonstrated by purpose) to make a false statement in a passport application and (ii) the inclusion of the "reasonableness" language in the jury instructions constituted prejudicial constitutional error. 266 F.3d at 58–62. We granted the government's petition for rehearing in the case, and invited and received defendant's response to the government's petition.

## DISCUSSION

### I. Section 1542's *Mens Rea* Requirement

We commence our analysis by revisiting our previous explication of § 1542's *mens rea* provision.[5] We adhere to our original view that the meaning of "willfully and knowingly" in the portion of § 1542 at issue in George's case should be identical to the meaning of "willfully and knowingly" articulated in *Browder v. United States*, 312 U.S. 335, 61 S.Ct. 599, 85 L.Ed. 862 (1941). *See George*, 266 F.3d at 58 (" '[I]dentical words used in different parts of the same act are intended to have the same meaning.' " (quoting *Sullivan v. Stroop*, 496 U.S. 478, 484, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990))). *Cf. United States v. Gabriel*, 125 F.3d 89, 101 (2d Cir.1997) (stating that the term "willfully" in 18 U.S.C. § 2(b) should be interpreted consistently throughout the statute). In *Browder*, the Supreme Court considered the "willfully and knowingly" language in the "use" prohibition of § 1542's predecessor statute, which imposed criminal penalties on " '[whomever] willfully and knowingly use[s] or attempt[s] to use, or

---

57–7005" was not assigned to anyone, the witness responded: "That's correct." Opposing counsel did not note this discrepancy upon cross-examination.

**5.** The section of 18 U.S.C. § 1542 under which George was convicted imposes criminal penalties on any person who "willfully and knowingly makes any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws."

furnish[es] to another for use, any passport the issue of which was secured in any way by reason of any false statement.'" 312 U.S. at 335 n. 1, 61 S.Ct. 599 (quoting 22 U.S.C. § 220 (repealed 1948)). The defendant Browder argued that the expression "willful[ly] and knowing[ly]" necessarily "[bore] the connotation of evil or dishonest[y]." 312 U.S. at 338, 61 S.Ct. 599. To support his argument, Browder relied on *United States v. Murdock*, a tax case, which articulated the rule that "in a criminal statute, ['willfully'] generally means an act done with a bad purpose," or is "also employed to characterize a thing done without ground for believing it is lawful." 290 U.S. 389, 394, 54 S.Ct. 223, 78 L.Ed. 381 (1933). In the context of § 1542, however, the Supreme Court rejected that meaning of the word and instead adopted the understanding that "the word 'willful' often denotes an intentional as distinguished from an accidental act." *Browder*, 312 U.S. at 342, 61 S.Ct. 599 (quoting *Murdock*, 290 U.S. at 394, 54 S.Ct. 223). Accordingly, *Browder* held that the phrase "willfully and knowingly," at least as used in § 1542, means only "deliberately and with knowledge and not something which is merely careless or negligent or inadvertent." *Id.* at 341, 61 S.Ct. 599. Therefore, the crime of "use" under § 1542 is complete once a passport that is obtained by a false statement is subsequently used "intentionally," even if "there [is] no ulterior evil purpose in mind." *Id.* at 342, 61

S.Ct. 599. That rationale controls this case.

█ In our previous disposition of this case, we held that Congress' use of "willfully and knowingly" in the portion of § 1542 under which George was charged "required that a defendant have the specific intent to make a false statement in a passport application." *George*, 266 F.3d at 58. We then supplied content to this "specific intent" standard, holding that it required the government to prove not only that the defendant knowingly made a false statement in a passport application, but also that the defendant acted with the specific purpose to make false statements. *Id.* at 59. In so doing, we did not simply adopt *Browder*'s definition of "willfully and knowingly" but supplemented it with additional analysis of "willfully" to hold that § 1542's mens rea provision required a purpose to make such false statements. *Id.* Having reviewed the arguments of both parties pursuant to the government's petition for rehearing, we now accept the government's argument that conviction under § 1542 only requires that a defendant provide in a passport application information he or she knows to be false and does not mandate that the defendant act with a specific purpose to make false statements or to violate the law, either generally or § 1542 specifically.

Divining the meaning of "willfully" in criminal statutory *mens rea* terms has long bedeviled American courts.[6] The Su-

---

**6.** In contrast, the criminal statutory *mens rea* term "knowingly" has attained a largely settled interpretation. The use of "knowingly" in a statutory *mens rea* provision typically signals that the statute only requires a finding of general intent for conviction. *See, e.g., Bryan v. United States*, 524 U.S. 184, 192–93, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998) (stating that the use of "knowingly" in 18 U.S.C. § 924(a)(1) does not refer to a "culpable state of mind or to knowledge of the law" but only

requires the government to prove the defendant's knowledge of the facts comprising the offense); *United States v. Scotti*, 47 F.3d 1237, 1245 (2d Cir.1995) (holding that use of "knowingly" in 18 U.S.C. § 894(a)(1) indicates general, not specific, intent). In turn, the Supreme Court has defined "general intent" as "proof of knowledge with respect to the *actus reus* of the crime." *Carter v. United States*, 530 U.S. 255, 269, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000); *see also United States v.*

preme Court has recognized that "willful" is a " 'word of many meanings' " whose construction is " 'often ... influenced by its context.' " *Ratzlaf v. United States*, 510 U.S. 135, 141, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) (alteration in original) (quoting *Spies v. United States*, 317 U.S. 492, 497, 63 S.Ct. 364, 87 L.Ed. 418 (1943)). The principal challenge in interpreting "willfully" in a criminal statute is determining whether the term indicates general or specific intent. The government's analysis of § 1542 illustrates the difficulty of this venture. In its original arguments to this Court, the government classified § 1542 as a "general intent" offense, while in its petition for rehearing, the government reclassified the offense as a "specific intent" crime but argued for the same functional meaning of the statute that it originally presented on appeal. Assuming "willfully" denotes specific intent, determining the level of specific intent commanded by the term presents an equally demanding challenge. While "specific intent" can be generally understood as "a special mental element particular to the crime with which defendant is charged," *United States v. Sewell*, 252 F.3d 647, 650 (2d Cir.2001), several different versions of specific intent have, as the government's petition for rehearing indicates, been articulated in Supreme Court jurisprudence and our own cases.

Having surveyed the jurisprudential terrain on "specific intent" the government

traverses in its petition for rehearing, we commence our reanalysis with the observation that only in exceptional cases has the Supreme Court interpreted the term "willfully" in criminal statutory *mens rea* provisions to require proof of the defendant's specific purpose to violate the law. The Court has read "willfully" to require such specific intent only when those activities classified as illegal do not on their own provide notice of their criminality, either because of the difficulty of comprehending the legally acceptable parameters of the activity or because the criminal *actus reus* can often be undertaken with a lawful purpose.

For example, the Supreme Court held that the word "willfully" in criminal tax statutes 26 U.S.C. §§ 7201 and 7203[7] requires the government to prove the defendant's actual knowledge of the relevant legal duty and to negate a defendant's "claim of ignorance of the law or a claim that because of a misunderstanding of the law, he had a good-faith belief that he was not violating any of the provisions of the tax laws." *Cheek v. United States*, 498 U.S. 192, 202, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). *Cheek* acknowledged that "[t]he general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system." *Id.* at 199, 111 S.Ct. 604. Yet the Court also noted that the "average citizen" often struggles to comply with the labyrinthine tax code

---

*Sewell*, 252 F.3d 647, 650 (2d Cir.2001) (stating that for liability to attach under a general intent crime, the defendant must intend to undertake the act required by the crime).

**7.** Section 7201 states in relevant part that "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony," while 26 U.S.C. § 7203 states in relevant part that "[a]ny person re-

quired under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor ...."

and regulations. *Id.* at 199–200, 111 S.Ct. 604. Because of this difficulty, Congress "softened the impact of the common-law presumption" that ignorance of the law is no excuse by making specific intent to violate the law a required element of several federal criminal tax offenses. *Id.* at 200, 111 S.Ct. 604. Accordingly, *Cheek* held that in criminal tax cases, willfulness "requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Id.* at 201, 111 S.Ct. 604.

The Court adopted similar reasoning in *Ratzlaf.* Defendant Ratzlaf was charged with structuring cash deposits to financial institutions in violation of 31 U.S.C. §§ 5322(a) and 5324(a)(3).[8] 510 U.S. at 137, 114 S.Ct. 655. *Ratzlaf* held that to convict the defendant, the government had to prove that he knew that the currency structuring in which he was engaged was illegal. *Id.* at 149, 114 S.Ct. 655. Observing that "currency structuring is not inevitably nefarious" and is often undertaken for legal purposes, the Court held that a person who structures currency transactions must demonstrate specific intent to violate the currency structuring provision in order to be convicted under it. *Id.* at 144–46, 114 S.Ct. 655.[9]

In *Bryan v. United States,* the Supreme Court declined to apply the stricter interpretation of "willfully" (established by *Cheek* and *Ratzlaf*) to create additional exceptions to the criminal law maxim that ignorance of the law is no defense to crime, but nevertheless still required the defendant to possess some knowledge of the illegality of his or her conduct. 524 U.S. 184, 195–96, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998). The *Bryan* petitioner challenged his convictions for conspiracy to violate and for violating 18 U.S.C. § 922(a)(1)(A), which forbids any person "except a licensed importer, licensed manufacturer, or a licensed dealer" from trading or transporting firearms in interstate or foreign commerce. *See id.* at 187 n. 2, 118 S.Ct. 1939. Section 924(a)(1)(D), the criminal penalty provision for § 922(a)(1)(A), imposes punishment on anyone who "willfully violates" the statute. *See id.* at 187 n. 3, 118 S.Ct. 1939 (internal quotations marks omitted). The *Bryan* petitioner argued that § 924(a)(1)(D)'s "willfully" language, in the context of § 922(a)(1)(A)'s prohibition, should be read to require not only knowledge that the conduct was unlawful, but also knowledge of the federal licensing requirement. *Id.* at 189–90, 193–94, 118 S.Ct. 1939. The petitioner based his argument in part on the *Cheek* and *Ratzlaf* holdings that a defendant had to demonstrate awareness of the law he was charged with violating in order to be convicted of "willfully" violating it. *Id.* at 194, 118 S.Ct. 1939.

The Court disagreed, holding that knowledge of the conduct's general unlawfulness—not knowledge of the federal li-

---

**8.** At the time of Ratzlaf's conviction, § 5324(a)(3) stated that no individual shall "for the purpose of evading the reporting requirements of § 5313(a) ... structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions." 31 U.S.C. § 5324(a)(3) (1994); *see Ratzlaf,* 510 U.S. at 139–40, 114 S.Ct. 655. Section 5322(a) at that time established penalties for persons "willfully violating this subchapter."

31 U.S.C. § 5322(a) (1994); *see Ratzlaf,* 510 U.S. at 137, 114 S.Ct. 655.

**9.** As a consequence of the *Ratzlaf* decision, Congress amended §§ 5322 and 5324 so that a knowing violation of § 5324 is not required to establish that a defendant committed a crime. Money Laundering Suppression Act of 1994, Pub.L. No. 103–325, § 411(a) and (c)(1), 108 Stat. 2160, 2253 (1994) (codified at 31 U.S.C. §§ 5322(a), (b) and 5324(d)).

censing requirement—is the only requirement for a "willful violation" of § 922(a)(1)(A). *Id.* at 196, 118 S.Ct. 1939. In particular, *Bryan* held that the "willfully" term of § 924(a)(1)(D) should not be interpreted, as in *Cheek* and *Ratzlaf,* to require that a defendant have specific knowledge of the particular law that he was charged with violating. *Id.* at 194–96, 118 S.Ct. 1939. Distinguishing *Cheek* and *Ratzlaf,* the Court noted that the challenged laws in those cases involved "highly technical statutes that presented the danger of ensnaring individuals engaged in apparently innocent conduct." *Id.* at 194, 118 S.Ct. 1939. As a consequence, the "willfulness" provisions in the statutes at issue in *Cheek* and *Ratzlaf* dictated the application of a more stringent standard of willfulness that required the government to prove that the defendants were aware of the laws that they violated. *Id.* at 195–96, 118 S.Ct. 1939. The Court distinguished Bryan's case by observing that "[t]he danger of convicting individuals engaged in apparently innocent activity that motivated our decisions in the tax cases and *Ratzlaf* is not present here because the jury found that this petitioner knew that his conduct was unlawful." *Id.* at 195, 118 S.Ct. 1939. The Court noted that the "need for specificity" under currency and taxation statutes does not exist under statutes such as the one at issue in *Bryan,* where "there is no danger of conviction of a defendant with an innocent state of mind." *Id.* at 195 n. 22, 118 S.Ct. 1939.

Nevertheless, the Court found that "willfully" still imposed a heightened *mens rea* standard relative to the other *mens rea* term in the statute. *Bryan* noted that 18 U.S.C. § 924(a)(1)(A)-(C) imposes criminal penalties on a person who "knowingly" violates the relevant substantive criminal laws, while § 924(a)(1)(D) imposes criminal sanctions on anyone who "willfully violates" the relevant substantive criminal law. *Id.* at 192, 118 S.Ct. 1939. The Court stated that satisfaction of the "knowingly" standard in § 924(a)(1)(A)-(C) only requires "proof of knowledge of the facts that constitute the offense." *Id.* at 193, 118 S.Ct. 1939. To establish that a defendant acted "willfully" under § 924(a)(1)(D), the jury had to find that "the defendant acted with an evil-meaning mind, that is to say, that he acted with knowledge that his conduct was unlawful." *Id.* The Court's reading of "willfully" to require a stricter *mens rea* standard than "knowingly" did not, however, establish a clear justification for interpreting the two terms differently. *Id.* at 193, 118 S.Ct. 1939.[10]

The significance of *Cheek, Ratzlaf,* and *Bryan,* in turn, lies in their atypicality. The Supreme Court's interpretations of "willfully" in *Cheek, Ratzlaf,* and *Bryan* represent a departure from the Supreme Court's seemingly principal approach to interpreting the term "willful" in criminal statutes. As reflected in *Cheek* and *Ratzlaf,* the Court has typically read "willfully" to require a purpose to violate a particular law only in those isolated circumstances where the obscurity or complexity of that particular criminal statute may prevent individuals from realizing that seemingly innocent acts are, in fact, criminal. In turn, the phrase "willfully" should not be interpreted to create unwarranted exceptions to the fundamental canon of criminal law that ignorance of the law is no excuse. The Supreme

**10.** Nor, perhaps, did it need to, as all of the parties and the members of the Court agreed that "willfully," as used in § 924(a)(1)(D), and unlike "knowingly," required *some* knowledge of the law. The question was, how much? *See Bryan,* 524 U.S. at 201, 118 S.Ct. 1939 (Scalia, J., dissenting).

Court has consistently interpreted criminal statutes to achieve a fine balance between protecting innocent conduct and penalizing wrongful conduct. *See Carter v. United States,* 530 U.S. 255, 269, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000) ("The presumption in favor of scienter requires a court to read into a statute only that *mens rea* which is necessary to separate wrongful conduct from 'otherwise innocent conduct.'") (quoting *United States v. X–Citement Video, Inc.,* 513 U.S. 64, 72, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994)); *X–Citement Video,* 513 U.S. at 71–73, 115 S.Ct. 464 (holding that conviction under statute prohibiting interstate commerce in child pornography requires proof of defendant's knowledge that children depicted are minors and stating that "the age of the performers is the crucial element separating legal innocence from wrongful conduct"); *Staples v. United States,* 511 U.S. 600, 619–20, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (holding that conviction under statute prohibiting possession of unregistered machine gun requires defendant's knowledge of the features of the firearm that bring it within the statutory prohibition because, given widespread acceptance of gun ownership, to dispense with this knowledge requirement would criminalize apparently innocent activity); *Liparota v. United States,* 471 U.S. 419, 426, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985) (holding that conviction for unauthorized use of food stamps requires government to prove that defendant knew his use of stamps was illegal in part because in the absence of the knowledge requirement, the statute would "criminalize a broad range of apparently innocent conduct").[11] Thus, although a defendant's general awareness of the unlawfulness of his or her conduct may be necessary to establish the boundary between protected and unlawful conduct, *Bryan*'s somewhat conclusory statement distinguishing "willfully" from "knowingly," such that "willfully" requires a defendant's cognizance of the generally unlawful nature of his or her action, also appears to be an atypical approach.[12]

Similarly, the Second Circuit has held that the term "willfully" in criminal statutes typically does not require the government to prove the defendant's specific intent to violate the particular criminal statute in question. Judge Learned Hand made this Court's first pronouncement on the term "willful," stating that in criminal statutes the word "means no more than that the person charged with the duty knows what he is doing. It does not mean that, in addition, he must suppose that he is breaking the law." *American Surety Co. of New York v. Sullivan,* 7 F.2d 605, 606 (2d Cir.1925). As Judge Hand suggested in *American Surety,* a defendant does not need awareness of a particular law to be convicted of its "will-

---

11. Reading *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon,* 515 U.S. 687, 696 n. 9, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995), in the context of the Supreme Court's extensive jurisprudence on the word "willfully" in criminal *mens rea* provisions, we revise our earlier view that *Babbitt*'s suggested synonymity between "willfully" and "specific intent to violate a law" should control the reading of "willfully" in § 1542. *See George,* 266 F.3d at 59. We believe that the statutory interpretation of the Endangered Species Act does not carry sufficient weight to trump the Court's well-established approach to interpreting "willfully" only to require the minimum necessary *mens rea* to establish a boundary between innocent and wrongful conduct.

12. As previously discussed, *Bryan*'s discussion of the content of the *mens rea* term "willfully" in the challenged statute is not accompanied by a discussion of the basis for this definition. *See* 524 U.S. at 193, 118 S.Ct. 1939.

ful" violation if other factors—such as the nature of the act, the violation of an ancillary law, or the contravention of generally understood norms about legal conduct— put the defendant on notice of the wrongfulness of his or her conduct. This Court's principal consideration in defining "willfully" in a criminal statute appears to be whether the defendant's only awareness of the wrongfulness of his or her conduct would come from reading the statute in question. If other sources provide effective notice of the impropriety of the conduct, then "willfully" does not have to be interpreted to require a defendant's actual knowledge of the law under which he or she is charged. *See, e.g., United States v. Mattice,* 186 F.3d 219, 225–26 (2d Cir.1999) (holding that to convict a defendant who "willfully fails" to pay child support under the Child Support Recovery Act, 18 U.S.C. § 228, the government must establish only that the defendant knowingly violated a state court or administrative child support payment order and stating that because "the parameters of the legal duty to pay [child support] are clear from the face of the ... order imposing the support obligation," the government need not demonstrate that the defendant knew that his conduct violated the Act); *Gabriel,* 125 F.3d at 101–02 (holding, *inter alia,* that 18 U.S.C. § 2(b), which provides that "[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal," did not require the government to prove a defendant's knowing violation of the law and explaining that because § 2(b)'s simplicity did not raise *Ratzlaf*-style concerns that an innocent individual might unwittingly violate the statute, a defendant was guilty under § 2(b) merely if he intentionally caused another to commit the necessary act); *United States v. LaPorta,* 46 F.3d 152, 158 (2d Cir.1994) (holding that conviction under 18 U.S.C. § 1361, which imposes criminal penalties on "[whomever] willfully injures or commits any depredation against any property of the United States," does not require proof of defendant's knowledge that property belongs to federal government because "[a]rson is hardly 'otherwise innocent conduct' " and "[n]o one harbors settled expectations that he is free to burn the property of others"); *United States v. Winston,* 558 F.2d 105, 109 (2d Cir.1977) (holding, *inter alia,* that the term "willful" in a *mens rea* provision of a statute that imposed criminal penalties on activities that potentially included protected First Amendment activity had to be interpreted to require that defendants "acted voluntarily and intentionally to violate a known legal duty," not merely that defendants were conscious of their activities, in order to safeguard First Amendment rights). These cases also suggest that a defendant's general awareness of the illegality of his or her acts—a concept articulated in *Bryan*—may constitute the *mens rea* boundary between protected and unlawful conduct.

The approach undertaken by the Supreme Court and the Second Circuit in interpreting the criminal statutory *mens rea* term "willful" to require only the minimum *mens rea* necessary to separate innocent from wrongful conduct governs our present reading of § 1542. Unlike the currency structuring statute at issue in *Ratzlaf,* § 1542 does not risk criminalizing otherwise innocent conduct because knowingly submitting false information in a passport application is not innocent behavior. We agree with the government's assertion that a reasonable person knowingly making false statements in a passport application should be on notice that he or she is likely not engaging in lawful con-

duct. In turn, because no conceivable meritorious reason exists for knowingly submitting false information on a passport application, conviction under § 1542 does not require a finding that the defendant acted with an awareness of the generally unlawful nature of his or her conduct, an improper purpose, or an "evil-meaning mind" as required in *Bryan*. Moreover, the defendant need not be cognizant of the particular illegality of his or her conduct under the statute as required in *Cheek* and *Ratzlaf*. Rather, interpreting "willfully" in § 1542 to establish a line between protected and punishable conduct only requires the government to prove that the defendant provided information in a passport application that he or she knew to be false. *Cf. United States v. Georgopoulos*, 149 F.3d 169, 171–72 (2d Cir.1998) (per curiam) (holding that 29 U.S.C. § 186(d)(2), which imposes criminal penalties on anyone who "willfully violates" the underlying substantive criminal statute, does not require the government to prove that "appellants had acted with bad purpose and with knowledge that their conduct was unlawful" but merely requires a showing of general intent). Finally, in contrast to many complicated provisions of the tax code, 18 U.S.C § 1542 is a facially clear statute. Thus, § 1542 does not raise a concern in the passport fraud context analogous to *Cheek*'s worry that a person's misunderstanding of the tax statutes might cause him or her to violate the tax laws unwittingly.

Moreover, we reject defendant's contention that this interpretation of "willfully" would strip the term of meaning when used in § 1542's phrase "willfully and knowingly." George argues that § 1542 contains three requirements for conviction: "[a] defendant's conduct must be knowing;

it must be willful; and it must be done with a specific intent to obtain a passport contrary to law." George offers two alternative arguments that § 1542 must be read to require a defendant's specific intent to violate § 1542. First, he argues that the use of "willfully" in addition to "knowingly" imposes the separate requirement that George have intended the issuance of a passport to him be "contrary to law." In the alternative, he argues that § 1542's "contrary to the laws" clause independently imposes this requirement. George contends that to decline to read § 1542's "willfully and knowingly" provision as requiring a defendant's specific intent to violate the statute is to render superfluous the "contrary to the laws" clause. Such a reading, George maintains, would contravene the Supreme Court's approach to statutory interpretation requiring all terms in a statute to be given content. *See, e.g., Dunn v. Commodity Futures Trading Comm'n*, 519 U.S. 465, 472, 117 S.Ct. 913, 137 L.Ed.2d 93 (1997) (expressing reluctance to treat terms in legislative enactments as mere surplusage); *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249, 105 S.Ct. 2587, 86 L.Ed.2d 168 (1985) (same).

Our rejection of George's interpretation of § 1542's "contrary to the laws" clause turns on our analysis of § 1542's "willfully and knowingly" provision. We believe that the proper approach to applying § 1542's "willfully and knowingly" phrase is not to determine whether each individual word in the phrase has been given meaning, but to ensure that the phrase *in its entirety* is applied to delineate the appropriate boundary between innocent and criminal conduct.[13] We believe that the

---

**13.** We do not believe that the placement of commas in the statute should determine the

outcome, as both parties have argued. The government quotes this Court's decision in

line between innocent and criminal conduct in the context of passport fraud is drawn according to the knowledge with which false statements are made. To protect otherwise innocent conduct, § 1542's "willfully and knowingly" *mens rea* phrase needs to be construed only to proscribe false statements that are knowingly included in a passport application and need not be interpreted to modify other statutory terms. The Supreme Court adopted this approach in interpreting the "willfully and knowingly" requirement in the "use" section of § 1542. *Browder*, 312 U.S. at 342, 61 S.Ct. 599. The Court found that the "willfully and knowingly" *mens rea* provision of the statute's "use" section was satisfied when a passport obtained by a false statement was intentionally used. *Id.* The Court similarly defined a "willful" act as one done with intention, not inadvertence. *Id.* Thus, the Court established the parameters of § 1542's "willfully and knowingly" provision and explicated the particular words in the phrase solely to advance the

meaning of the entire *mens rea* phrase. Every circuit to have addressed this issue has adopted the Eleventh Circuit's holding in *United States v. O'Bryant*, which incorporated *Browder*'s interpretation of § 1542's "willfully and knowingly" term into its holding that "[t]he crime [of a § 1542 false statement violation] is complete when one makes a statement one knows is untrue to procure a passport. Good or bad motives are irrelevant." 775 F.2d 1528, 1535 (11th Cir.1985) (citations omitted); *see, e.g., United States v. Salinas*, 373 F.3d 161, 168 (1st Cir.2004) (citing *O'Bryant* for the proposition that "18 U.S.C. § 1542 creates a classic point-in-time offense: at the moment that an applicant makes a false statement with the intent to procure a passport, the crime is complete"); *Liss v. United States*, 915 F.2d 287, 293 (7th Cir.1990) (adopting *O'Bryant*'s holding that conviction under § 1542 simply requires defendant to know that the information submitted in his passport application was false).[14]

*United States v. Bronx Reptiles*, 217 F.3d 82, 86–87 (2d Cir.2000) as support for the proposition that the commas in § 1542 should prevent "willfully and knowingly" from being read to modify § 1542's "contrary to the laws" phrase: "This Court has recently noted that a comma often indicates congressional intent to limit the prescribed mental state only to the elements that precede, not follow the comma." However, this Court has also "been advised that punctuation is not necessarily decisive in construing statutes, and with many statutes, a mental state adverb adjacent to initial words has been applied to phrases or clauses appearing later in the statute without regard to the punctuation or structure of the statute." *United States v. Morris*, 928 F.2d 504, 507 (2d Cir.1991) (citations omitted).

The government also offers no support for its contention that "by adding [the phrase 'contrary to the laws'] to the passport application fraud statute in 1917, Congress made clear that any false statement made with the intent to secure the issuance of a passport

would violate Section 1542 only if the false statement is contrary to law or regulation."

14. In our original opinion, we referred with approval to *United States v. Winn*, 577 F.2d 86, 91 (9th Cir.1978) as support for the proposition that § 1542's use of the term "willfully" signals that the requisite specific intent under § 1542 is a purpose to disobey the law. *George*, 266 F.3d at 58. *Winn* affirmed a trial court's jury instruction that the government must prove the defendant's specific purpose to violate § 1542 for conviction. 577 F.2d at 91. *Winn* challenged only the sufficiency of the evidence supporting his conviction, however, and not the jury instruction's accuracy. *Id.* Therefore, the Ninth Circuit's statement that the trial court "correctly instructed the jury," for which no support was offered, was not necessary for the court to reach the issue presented on appeal. Moreover, the Ninth Circuit appeared to accept the prevailing interpretation of § 1542's *mens rea* provision in *United States v. Suarez–Rosario*, which held that a crime occurs under § 1542 when a defendant knowingly makes a false statement

## II. Jury Instruction

We review *de novo* the propriety of jury instructions. *United States v. Naiman*, 211 F.3d 40, 50 (2d Cir.2000). The district court charged the jury that it could only convict the defendant upon a showing that:

First, the defendant made a false statement in an application for [a] United States passport. Second, the defendant made such false statement unlawfully, knowingly and willingly, and third the defendant made such false statement with intent to secure the issuance of a United States passport.

The district court then explained that "[a]n act is done knowingly if it is done purposely and voluntarily as opposed to mistakenly or accidentally" and defined a "willful" act as one done "with an intention to do something the law forbids, a bad purpose to disobey the law." The court further explained that to act willfully, "[t]he defendant need not have known that he was breaking any particular law, but he must have been aware of the generally unlawful nature of his act."

The district court then stated:

If you believe that Mr. George was trying to comply with the law by following the instructions of the person to whom he submitted his passport application and you believe that a reasonable person desirous of obeying the law would have accepted those instructions as accurate, then you may not convict Mr. George based on the fact that the number was not his actual Social Security number.

In our original opinion, we understood this second portion of the jury charge to be an instruction on § 1542's *mens rea* requirement. *George*, 266 F.3d at 60 ("[T]he district court modified George's proposed instruction, however, by adding a phrase that forms the basis of this appeal."). We then held that the injection of a reasonableness standard into the intent standard resulted in prejudicial constitutional error, requiring vacatur. *See id.* at 60–62.

We begin our analysis by examining the standard articulated by the district court for conviction under § 1542. As discussed, a conviction under § 1542 only requires a finding that the defendant knowingly made false statements in a passport application. The district court's statement that the defendant must have acted with "a bad purpose to disobey the law" and "must have been aware of the generally unlawful nature of its act," while perhaps appropriate as a definition of "willful" in other

to obtain a passport. 237 F.3d 1164, 1167 (9th Cir.2001). No mention was made of a requirement that the government prove knowledge of the law. *Id.*

Additionally, we originally held that *United States v. Washington*, 705 F.2d 489, 493–94 (D.C.Cir.1983), stood for the proposition that specific intent must be established to convict under § 1542. *George*, 266 F.3d at 58. *Washington* adopted *Browder*'s understanding of § 1542, however, that an act of making false statements in a passport application is done "willfully and knowingly" if the statements are made deliberately; the individual's motive in making the statements is irrelevant. 705 F.2d at 493. *Washington* stated that evidence of motive may be relevant to contesting the falsity of the statements themselves, a

concern not at issue in the instant case. *Id.* at 494; *see also United States v. Mount*, 757 F.2d 1315, 1318 (D.C.Cir.1985) ("Under the terms of 18 U.S.C. § 1542, the government must prove that the defendant made a false statement with knowledge of its falsity and that he had the specific intent to secure the issuance of a passport.").

Finally, our present holding also comports with this Court's previous decision in *United States v. Jean–Baptiste*, which adopted *O'Bryant*'s interpretation of § 1542's *mens rea* provision, although *Jean–Baptiste* addressed the different question of whether the government had to prove that the defendant intended to use a passport obtained by false statements in order to secure a conviction under § 1542. 166 F.3d 102, 111 (2d Cir.1999).

contexts, *see, e.g., Bryan,* 524 U.S. at 190, 118 S.Ct. 1939; *Winston,* 558 F.2d at 107–09, does not comport with *Browder*'s definition of "willful" or with the standard we establish today for application in future § 1542 prosecutions. Ultimately, however, because the jury decided to convict George under a more exacting *mens rea* standard than necessary under § 1542, it follows that the requirements for conviction under § 1542's more easily satisfied *mens rea* standard are met. The jury's finding that the elements of the crime were met—that is, the jury's finding that George "knew" he was making a false statement—cannot be reversed by this Court if " 'any rational trier of fact could have found the elements of the crime beyond a reasonable doubt.' " *United States v. Simmons,* 923 F.2d 934, 953 (2d Cir.1991) (quoting *United States v. Fiore,* 821 F.2d 127, 128 (2d Cir.1987)). We explained in *Simmons* that "[t]his exacting standard of review requires us to construe the evidence in the light most favorable to the Government, and to draw all inferences in favor of the verdict." *Id.* at 953 (citations omitted).

We next ask whether George could "know" that he was making a false statement if he was in fact told that he was allowed to write a number other than his Social Security number on the passport application form. Defendant principally relies on *United States v. West,* 666 F.2d 16 (2d Cir.1981), for the proposition that if defendant believed he was authorized to make a false statement, he cannot be said to have knowledge of the falsity of his statement. *West* involved a prosecution under 18 U.S.C. §§ 1001 and 1014 for making false statements on documents submitted to government agencies; the defendant was charged with submitting to a government agency documents "purport[ing] to bear the signature of . . . [defendant's] then wife, but on which [defendant] in fact had signed [his wife's] name."

666 F.2d at 18. We held that if the defendant reasonably believed that he was legally authorized to sign his wife's name, he "did not have the specific intent to submit false documents necessary to constitute a violation of" the applicable statutes. *Id.* at 19. We agree with the government's argument that *West* does not in fact stand for the proposition that belief of authorization negates knowledge of falsity. The *West* holding refers to the fact that a defendant charged with submitting a forged signature can present the affirmative defense that he reasonably believed that the person whose signature was forged actually authorized the signature. *See West,* 666 F.2d at 19 (noting that the defendant's assertion "that he was authorized, or reasonably believed that he was authorized, to sign his wife's name on the documents . . . did constitute an affirmative defense which tended to negate the government's charge that he 'knowingly' submitted false documents"); *see also United States v. Carr,* 582 F.2d 242, 245 (2d Cir.1978) (agreeing that "authorization to sign another's name precludes criminal culpability").

■ As the instant case does not deal with the grant of permission for a proxy signature, the facts of *West* and *Carr* are readily distinguishable. Despite George's belief that he was authorized to write something other than his Social Security number on the form, he still knew that the number he wrote down was not his Social Security number. While George's subjective belief that it was acceptable to write another number on the form deprives him of intent to violate the law or intent to defraud, as discussed earlier in this opinion neither intent to violate the law nor intent to defraud are elements of the crime of passport application fraud. To convict under § 1542, the government needs only to demonstrate that a defendant provided in a passport application information that

he or she knew to be false; a defendant's alleged reliance on the statements of another would not negate § 1542's simple requirement of volitional act. The holdings of these cases do not absolve George of his culpability for submitting a variation of his jail identification number in lieu of his Social Security number. Moreover, a rational trier of fact could easily have found that George knew he was making a false statement. The record contains ample evidence of George's repeated attempts to procure an American passport, using a variety of false Social Security numbers and places of birth.

 We next analyze the "reasonableness" language of the second portion of the jury charge. Upon consideration of the parties' arguments in response to the government's petition for rehearing, we agree with the government that the second portion of the jury charge did not refer to § 1542's *mens rea* standard at all. Rather, it was a charge on the entrapment by estoppel defense. The defense of entrapment by estoppel bars conviction of a defendant whose commission of a crime results from government solicitation, so long as the defendant reasonably believes that government agents authorized him to commit the criminal act. *United States v. Abcasis,* 45 F.3d 39, 42 (2d Cir.1995). In *United States v. Corso,* this Court stated that "[t]o invoke the entrapment by estoppel defense, the defendant must show that he relied on the official's statement and that his reliance was reasonable in that a person sincerely desirous of obeying the law would have accepted the information as true ...." 20 F.3d 521, 528 (2d Cir. 1994) (quoting *United States v. Weitzenhoff,* 1 F.3d 1523, 1534 (9th Cir.1993)). The entrapment by estoppel defense does not negate any of the statutory elements of a crime. Rather, the entrapment by estoppel defense recognizes that even though

the government may have proved all of the elements of a crime, to convict the defendant for acts committed in reasonable reliance on a government official's statement would violate due process or fundamental fairness. *Cox v. Louisiana,* 379 U.S. 559, 571, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965); *Abcasis,* 45 F.3d at 44 (stating that entrapment by estoppel doctrine "depends on the unfairness of prosecuting one who has been led by the conduct of government agents to believe his acts were authorized").

 A number of factors clearly demonstrate that the second portion of the jury charge at issue is an instruction on the entrapment by estoppel defense, not an incorporation of "reasonableness" into § 1542's intent requirement. First, the language of the jury charge restates in almost identical terms *Corso's* articulation of the requirements of the entrapment by estoppel defense. Second, an examination of the colloquy concerning the jury charge also demonstrates that the charge involved the entrapment by estoppel defense. The parties discussed this language with the district court at length with the explicit intent of properly articulating the charge on the entrapment by estoppel defense. Moreover, the district court judge referred specifically to the *Corso* standard for establishing entrapment by estoppel in explaining the second portion of the jury charge, noting that "I purposely made it an objective standard, I didn't make it for this defendant because I think that's what the standard requires under *Corso.*" Indeed, the parties' original briefs in this appeal assume that the language at issue involved the entrapment by estoppel defense. *See* Defendant–Appellant's Brief at 24 ("The charge the Court gave related to the doctrine of 'entrapment by estoppel.' "); Appellee's Brief at 16 (quoting the charge at issue after noting that "[d]uring

the jury charge, Judge Stein delivered the following instruction on the entrapment by estoppel defense: . . . .").[15] Thus, the claimed error—insertion of the reasonableness language into the jury charge on the *mens rea* requirement of § 1542—never occurred, because the reasonableness language was only included as part of the jury charge on entrapment by estoppel.[16]

The final issue we must resolve is the applicability of the entrapment by estoppel defense to George. Entrapment by estoppel is a defense applicable only to crimes that do not require fraudulent intent, because the establishment of entrapment by estoppel would also negate the intent requirement of such crimes. This Court explored this point in *United States v. Gil*, 297 F.3d 93, 107 (2d Cir. 2002). In *Gil*, the Second Circuit held that a defendant's claim that he was authorized to submit false invoices would have negated the intent to defraud element of the mail fraud statute under which the defendant was being prosecuted. 297 F.3d at 107 (noting that the defendant's conduct "was criminal only if he had the requisite

criminal intent to commit a fraud, intent that he lacked if he was authorized to submit inflated invoices"). Therefore, the entrapment by estoppel defense was inapplicable. *Id.* In contrast, § 1542 is satisfied as soon as the defendant makes a statement he knows to be false. While the mail fraud statute requires proof of an intent to defraud, § 1542 does not contain such an intent requirement. Thus, the entrapment by estoppel can be used as a defense to a charge under § 1542. *Cf. United States v. Smith*, 940 F.2d 710, 714 (1st Cir.1991) (noting that in a firearm prosecution under 18 U.S.C. § 922(g), "[t]he government need only prove that [the defendant] knew he possessed the firearms, not that he understood that such possession was illegal," and that evidence that a law enforcement agent allegedly authorized the firearm possession was thus not material to whether the elements of the crime were satisfied). As the government observed, the jury was properly instructed on the entrapment by estoppel defense and rejected it. There was adequate evidence on the basis of which a

---

15. George argues that the district court inappropriately included elements of the defense of entrapment by estoppel in the jury charge, which he argues should have consisted solely of the defense of good faith that he claims to have presented at trial. A claim of good faith can be offered in a jury instruction as a defense to willful criminal conduct. *See, e.g., United States v. Doyle*, 130 F.3d 523, 540 (2d Cir.1997) (upholding jury instruction in an export fraud case that "[a] defendant's conduct is not willful [if] it was the result of a good faith understanding that he was acting within the requirements of the law") (second alteration in original). The Supreme Court has stated that a good faith defense should not be subject to a reasonableness requirement. *Cheek*, 498 U.S. at 203, 111 S.Ct. 604. George maintains that any discussion of reasonableness in the second portion of the jury charge was, therefore, impermissible. We agree with the government, however, that George did not request an instruction on the

good faith defense, and we find no error in the district court's jury instruction on the defense of entrapment by estoppel. *See United States v. Bradley*, 812 F.2d 774, 778 (2d Cir.1987) (stating that defendant who failed to submit a jury instruction to the trial court could not contest the issue on appeal absent "plain error").

16. We note that under the § 1542 *mens rea* standard established in this case, the reasonableness of the defendant's conduct is irrelevant to determining whether the defendant possessed the necessary *mens rea* to be convicted for a violation of the statute. To convict under § 1542, the government has only to prove that the defendant provided in a passport application statements that he or she knew to be false. Nonetheless, we agree with the government that the district court's instruction was an instruction on the entrapment by estoppel defense.

rational jury could find that George's actions satisfied the requirements for conviction under § 1542. Therefore, this Court's standard for upholding a jury verdict is satisfied.

## CONCLUSION

Upon review of the arguments presented by both parties in response to our grant of the government's petition for rehearing in this case, we AFFIRM the district court's judgment of conviction in all respects.