**UNITED STATES of America,**
**Appellee,**

v.

**Mario LONDONO–TABAREZ,**
**Defendant–Appellant.**

**Docket No. 02–1558.**

United States Court of Appeals,
Second Circuit.

Jan. 12, 2005.

For related reference, see 2001 WL
1190997.

Andrew L. Fish, Assistant United States Attorney (David N. Kelley, United States Attorney for the Southern District of New York, Diane Gujarati, Karl Metzner, Assis-tant United States Attorneys, on the brief), New York, New York, for Appellee.

Laurie S. Hershey, New York, New York, for Defendant–Appellant.

Present: KEARSE, CALABRESI, Circuit Judges, and RAKOFF, District Judge.*

## SUMMARY ORDER

Mario Londono–Tabarez, appellant here, was charged with conspiring to distribute more than five kilograms of cocaine. At his trial, Londono did not dispute the existence of the conspiracy but testified that he was not part of it. Rejecting his testimony, the jury convicted, and Londono was sentenced to 188 months' incarceration, five years' supervised release, and a $100 special assessment.

On appeal, the Government concedes that the trial court erred in admitting portions of the guilty plea allocutions of two of Londono's co-conspirators, Carlos Zapata and Mario Granados. *See Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). But since this evidence was directed at establishing the existence of the conspiracy, for which there was ample other evidence, and not Londono's participation in the conspiracy (which is all that he disputes), the plea allocutions were entirely cumulative. Therefore, even were we to apply our "modified plain-error" rule, their admission was harmless. *See United States v. Henry,* 325 F.3d 93, 100 (2d Cir.2003).

Appellant also challenges the admission of the testimony of Drug Enforcement Administration Special Agent Todd Zimmerman interpreting, as an expert on narcotics transactions, certain taped con-

---

* The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

versations between Londono and Granados and between Granados and Zapata. Regarding Zimmerman's status as an expert,[1] it is true the district court did not hear argument on Zimmerman's qualifications, as it should have, *see Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 592–94, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (obligating district judge to evaluate scientific expert's qualifications and proposed testimony in advance); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (holding that *Daubert*'s gatekeeping obligation applies to all expert testimony), nor explicitly rule that he was an expert until midway through his testimony. However, this did not prejudice Londono, since, as the trial court eventually found, Zimmerman's participation in hundreds of narcotics investigations over approximately ten years well qualified him as an expert on narcotics transactions and their modus operandi. *See United States v. Simmons,* 923 F.2d 934, 946 (2d Cir.1991).

■ More problematic are those portions of Zimmerman's testimony that sought to "de-code" certain statements on the tapes. Rule 702 allows expert testimony that will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. Thus, expert testimony regarding matters not beyond the ken of an average juror should generally be excluded. *See, e.g., United States v. Cruz,* 981 F.2d 659, 664 (2d Cir. 1992) (expert testimony should have been excluded where it concerned narcotics operations that were not "reasonably perceived as beyond the ken of the jury"); *United States v. Long,* 917 F.2d 691, 701–03 (2d Cir.1990) (expert testimony should have been excluded where it concerned the structure and operations of an illegal kickback scheme that were not beyond the ken

of an average juror). A question has arisen as to the extent to which a case agent may testify as an expert as to the meanings of certain words and phrases used in the course of narcotics transactions. This Court has now made clear that such agent-experts may not interpret statements that are "patently not drug code," nor give expert testimony as to those statements where there is "no evidence that these phrases were drug code with fixed meaning either within the narcotics world or within this particular conspiracy." *United States v. Dukagjini,* 326 F.3d 45, 55 (2d Cir.2003); *see also United States v. Tommy Cruz,* 363 F.3d 187, 196 (2d Cir.2004) (finding that "expert witness called on to testify about the meaning of narcotics codes strays from the scope of his expertise when he interprets ambiguous words or phrases and there is no evidence that these terms were drug codes"). Unarmed with the benefit of these later decisions, the district court allowed Zimmerman to testify, over objection, as to the purported meaning of certain words and phrases as to which an insufficient foundation had been laid under the teachings of *Dukagjini* and *Tommy Cruz.* Thus, in interpreting the taped conversations between Londono and Granados, Zimmerman not only decoded "tickets" and "receipt" as referring to kilograms of cocaine but went so far as to interpret in ways incriminatory to Londono such vague remarks as "bring it up here," "organize this," "pain in the neck" and "make us this loan." There was no showing that these ordinary words and phrases had any accepted code meaning in the narcotics trade, yet Zimmerman interpreted them. He also went well beyond his expertise in explaining, for example, that the references in the tapes to someone called "Sobrino" actually referred to

1. Zimmerman also testified as a fact witness.

two different people, one of whom was Londono, or that a reference to "everyone is struggling" referred to the economic consequences of selling low-quality cocaine. The average juror could understand these words and phrases without Zimmerman's assistance.

Nevertheless, after examining the whole record, including Londono's own testimony, which was manifestly not credible, we conclude that the district court's error in admitting parts of Zimmerman's testimony was harmless. *See Dukagjini,* 326 F.3d at 62; cf. *United States v. Chin,* 934 F.2d 393, 401 (2d Cir.1991).

Londono's other claims of error can be disposed of quickly. The district court's finding for sentencing purposes that Londono was engaged in trafficking more than 50 kilograms of cocaine was supported by the trial record and was not "clear error." *See United States v. McLean,* 287 F.3d 127, 133 (2d Cir.2002). The district court's statement that, based on the trial record, it accepted and adopted the facts in the presentence report was sufficient. *See United States v. Desimone,* 119 F.3d 217, 228 (2d Cir.1997). Although a second interpreter was not present to translate discussions between the defendant and his attorney during rebuttal summation and during the court's charge to the jury, Londono has failed to identify any way in which he was prejudiced by the supposed error. The trial court did not err in permitting the prosecutor to state on summation that Garcia's plea agreement required him to provide information about the conspiracy in general, giving him no incentive to specifically target Londono. The prosecutor's argument was a fair one and did not misstate the evidence, which is all that is required given the "broad latitude" prosecutors have in suggesting inferences from the evidence in closing. *United States v. Myerson,* 18 F.3d 153, 163 (2d

Cir.1994). Finally, the trial court did not err in not providing a jury instruction on how to interpret Zimmerman's expert testimony, since Londono never requested such an instruction and since the absence of such an instruction does not, on this record, constitute plain error. *See United States v. George,* 386 F.3d 383, 400 n. 15 (2d Cir.2004).

Accordingly, all of Londono's arguments having been considered and found to be without merit, the conviction and sentence are AFFIRMED.